RICHARD FISCHER *et al.*, Plaintiffs-Appellants, v. G & S BUILDERS *et al.*, Defendants-Appellees.

Third District   No. 3—85—0812

Opinion filed August 26, 1986.—Rehearing denied October 16, 1986.

Emmanuel F. Guyon, of Streator, for appellants.

John Olivero and Lisa M. Olivero, both of Peru, and James R. Fabrizio, of Garrison, Fabrizio & Hanson, Ltd., of Joliet, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs, Richard and Marissa Fischer, entered into an install-ment contract to purchase a home located at 703 Seventh Street, Peru, from defendants G & S Builders, a partnership, on May 1, 1981. The purchase price of the home was $50,000. The terms of the con-tract required plaintiffs to make a down payment of $5,000; monthly payments of $490.66 from June 1, 1981, through April 1, 1984; and a balloon payment of $44,589.56 on May 1, 1984. On April 9, 1984, three weeks before their contract obligations were to have been fully discharged, plaintiffs filed a complaint in the circuit court of La Salle County in 10 counts, complaining of breach of implied warranty of habitability, fraud, and deceptive trade practices on the parts of the seller partnership, its individual partners and the real estate agency that brokered the parties' 1981 transaction.

Defendants G & S Builders and its partners, Gerald Gingerich and William Schmollinger, answered the complaint and counterclaimed for breach-of-contract damages in the amount of $45,030.22, representing the unpaid installment due for April 1984 and the balloon payment. Plaintiffs subsequently amended their complaint to add an 11th count. Defendant real estate agency, Trompeter, Huber and Guttilla, then an-swered the two counts of the amended complaint directed to it. Ulti-mately, on September 9, 1985, the matter proceeded to a jury trial.

At the close of plaintiffs' case in chief, all defendants moved for directed verdicts in their favor. After hearing arguments of counsel, the court allowed defendants' motions, entered judgment for all defendants, and discharged the jury accordingly. Plaintiffs filed a post-trial motion and a motion to amend pleadings pursuant to section 2—616(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—616(c)). The motions were denied, and plaintiffs have appealed.

In this appeal, plaintiffs present numerous "issues" which, in es-sence, boil down to these three questions: (1) whether the trial court

abused its discretion in allowing defendants' motion *in limine* to preclude expert testimony by plaintiffs' witness, J. Emerson Miller, an Illinois plumbing inspector; (2) whether the trial court abused its discretion in denying plaintiffs' post-trial motion to amend their complaint to add counts based on alleged statutory violations; and (3) whether the trial court erred in granting defendants' motions for a directed verdict at the close of plaintiffs' case in chief.

Initially, we will consider the plaintiffs' challenge to the court's ruling on defendants' motion *in limine*. J. Emerson Miller is a licensed plumbing inspector for the Illinois Department of Public Health. From the evidence of record, it appears that plaintiffs enlisted his services for the purpose of inspecting the plumbing at the real estate in question around August of 1983. Miller did so, and prepared a report of his findings on August 25, 1983. Miller's report describes seven separate violations of the Illinois State plumbing code throughout the house. It appears that at some unspecified later date, but prior to the trial of this cause, Miller conferred with defendant Gingerich about the inspection he had conducted at the Fischers' behest.

Supreme Court Rule 220(b)(1) requires the disclosure of an expert witness at the later of either the first pretrial conference or 90 days after the substance of his expert opinion is known to the party that intends to introduce such witness. (103 Ill. 2d R. 220(b)(1).) It appears that the first pretrial conference in this case was held on July 13, 1984. An order of that date was entered by the trial court allowing "discovery *** to each party as they deem advisable." The record contains an order of the court dated September 28, 1984, resetting the cause for a status hearing on December 5, a final settlement conference on January 25, 1985, with the trial to commence three days later. Other pretrial matters, including defendants' motions to dismiss the complaint, were heard in the interim; and on May 7, 1985, the court entered another order resetting the final settlement conference for September 6, 1985, with the trial to begin on September 9, 1985, when it did in fact commence.

It was not until the last settlement conference on September 6, 1985, that plaintiffs disclosed their intent to introduce Miller's expert testimony at trial. Defendants moved *in limine* to exclude the expert opinion of Miller for violation of discovery Rule 220(b); and, in oral argument on the motion, defense counsel requested that a continuance of the trial be granted in the alternative. Plaintiffs' counsel resisted a continuance. The trial court granted defendants' motion to exclude Miller's opinion testimony as an expert, but specifically allowed him to

be called for the purpose of testifying to what he did and what he observed in response to the plaintiffs' request that he inspect the plumbing at the property in question.

In this appeal, plaintiffs do not deny that their last-minute disclosure of Miller as an expert witness violated Supreme Court Rule 220. They suggest, however, that the rule is "flexible" and that because defendants "knew of Mr. Miller's presence in the controversy," and because they knew of his report before the suit was filed, defendants could not claim surprise or prejudice by plaintiffs' untimely disclosure. Ergo, plaintiffs reason, the court's ruling on the motion *in limine* was error.

In advancing this argument, plaintiff cite no authority. Indeed, our independent research indicates that there has been little written on the sanction provision of Rule 220 by the Illinois courts of review.

■ The rule provides: "Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein *will result in disqualification of the expert as a witness.*" (Emphasis added.) (103 Ill. 2d R. 200(b)(1)). Generally, the imposition of sanctions for a party's noncompliance with discovery rules is within the discretion of the trial judge. (See *Ferenbach v. DeSyllas* (1977), 45 Ill. App. 3d 599, 359 N.E.2d 1214 (decided under Supreme Court Rule 219 (87 Ill. 2d R. 219) on grounds of failure to make disclosures in answer to interrogatories and in response to motion to produce); *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 422 N.E.2d 241 (decided under former section 58(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 58(3), now par. 2—1003(c)), prior to adoption of Supreme Court Rule 220).) In our opinion, the general proposition holds true with respect to sanctions under Rule 220 as well. The trial court may impose the sanction at its discretion, and the court's decision should not be interfered with on review absent a clear showing of abuse.

■ The trial court's ruling here resulted in disqualifying the witness (Miller) as an expert, but not as witness to what he had personally observed. Because of plaintiffs' failure to give reasonable notice to defendants that Miller would be called to testify as an expert, there was no opportunity for defendants to depose Miller or to attempt to rebut his opinions with their own experts. That Miller's inspection of the premises was a fact known to one or more of the defendants is not an appropriate substitute for the type of disclosure contemplated by Rule 220(b). Indeed, until September 6, 1985, Miller could just as well have been considered a "consulting expert" for plaintiffs, in which case no disclosure would have been required. (See 103 Ill. 2d R.

220(b)(2).) So as not to prejudice defendants, it was only fair for the court, on defendants' motion, to continue the trial to a later date or to restrict Miller's testimony. The court's choice, it appears, was influenced by plaintiffs' resistance to a continuance. Since either option would have been an acceptable response (see *Beasley v. Huffman Manufacturing Co.* (1981), 97 Ill. App. 3d 1, 442 N.E.2d 241), we find no abuse of the court's discretion in restricting Miller's testimony, thereby selecting the option which apparently was perceived by plaintiffs' counsel at the time as less burdensome to the plaintiffs.

■ We turn next to plaintiffs' argument that the trial court erred in granting a directed verdict for defendants. The *"Pedrick rule"* (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504) applies in determining whether a verdict should be directed at the close of plaintiffs' case—whether all the evidence, viewed most favorably to the plaintiffs, so overwhelmingly favors defendants that no contrary verdict based on the evidence could ever stand. *Roedl v. Lane* (1976), 41 Ill. App. 3d 1062, 355 N.E.2d 354.

Implicit in the trial court's ruling for defendants here is its finding that plaintiffs' evidence totally failed to prove essential elements of their case. (*Anthony v. New York Central R.R.* (1965), 61 Ill. App. 2d 466, 209 N.E.2d 686.) Having read the record on appeal in its entirety, we have no doubt that the trial court ruled properly.

A brief review of the evidence adduced at trial will help to explain why the trial court was justified in directing verdicts for the defendants. At this point, it is clear that the sole defect which is at the heart of plaintiffs' complaint concerns an odor in the home, allegedly resulting from improper plumbing. At trial, it was established that plaintiffs were shown the home at 703 Seventh Street, Peru, by real estate salesman Rich McKee in March of 1981. McKee, at the time, was working for real estate broker Terri Trompeter. According to plaintiffs, they noticed an odor in the basement area on their inspection of the premises and asked McKee about it. McKee said it was "probably" from the 3- to 4-foot-high stack of laundry that they saw in the area of the washing machine and that it would be gone when the laundry was removed. Plaintiffs also testified that one or both of them observed wet carpeting in the basement, but they made no inquiry about it at the time.

Plaintiffs further testified that McKee told them the home was about 60 years old, but had been gutted and completely renovated by the owners (G & S Builders) with all new materials. Plaintiffs made their offer of $50,000 for the property following their inspection on March 15, 1981. (There is some indication of record that plaintiffs

may have entered the property on one prior occasion, but it does not appear that any significant inspection was made by them on that first visit.) This offer was accepted by defendant partnership, G & S Builders, through Terri Trompeter. Plaintiffs did not meet defendants Gingerich and Schmollinger until May 1, 1981, at the closing. According to plaintiffs' evidence, they discussed the home with one of the partners (the partner's identity was not, however, established) before they left the closing. That partner represented that they would not be disappointed with the home, that all new materials had been used in renovating it. The plumbing, electrical wiring, walls and studs were all new.

Shortly after moving into the home, plaintiffs testified they began to smell a sewer-gas odor that would permeate the entire house. Plaintiffs complained to Terri Trompeter. The broker referred them to Gingerich. Gingerich told them to fill the plumbing traps with water. Plaintiffs testified that this solution would provide only temporary relief. They further testified that the carpeting in the basement bathroom never dried out. In April of 1982, the Fischers vacated the premises and moved to Ohio for employment reasons. The house was rented out from September 1982 until April of 1984.

Also testifying on behalf of the plaintiffs was their former babysitter Betty Keebler. Keebler testified that the odor in the home was so bad that she would get headaches about two or three times per week. Even opening the windows would at times not alleviate the strong odor. Keebler said she smelled the pipes to determine where the odor was coming from, and decided that it was from all of the drain pipes in the basement.

J. Emerson Miller also testified about his observations of the home. Miller inspected the plumbing, as aforesaid, in 1983, after the Fischers' first renters, the Helson family, had been evicted for nonpayment of rent and damage to the home. Miller noted several violations of the State plumbing code throughout the house.

Plaintiffs also presented in their case in chief the testimony of defendants Terri Trompeter, Gerald Gingerich and William Schmollinger as adverse witnesses under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102). The sellers' testimony established that in fact all new plumbing materials had been used in the renovation of the home to the point where the plumbing connected to pipes in the basement floor. The sellers denied making any representations to the Fischers prior to the closing on May 1, 1981.

Terri Trompeter testified that she too had never made any repre-

sentations to the Fischers prior to the sale. At the closing, Trompeter had told the Fischers they were getting a good deal on the house. She denied noting any offensive odor in the home at any time, and said that the home had been shown to other real estate agents and to prospective renters and buyers after the Fischers moved to Ohio in 1982. One offer to purchase the property for $51,000 was made in 1983, but it was rejected as unacceptable by the Fischers.

Finally, the evidence established that the partnership of Trompeter, Huber and Guttilla was not formed until March of 1982. Mssrs. Huber and Guttilla were not even associated with "Trompeter Realty" (as the firm was known in 1981) at the time plaintiffs purchased the property in question. (Despite the unequivocal testimony on this point, plaintiffs never sought to amend their complaint to rename the brokerage firm or to add the broker as an individual party defendant. Defendant partnership, Trompeter, Huber and Guttilla, did not move to dismiss the counts against it on this basis, but urged the misnomer in arguing that the trial court should grant its motion for a directed verdict. On appeal, plaintiffs contend that the real estate partnership has waived the defense of misnomer for failure to raise it earlier in the trial court. We do not reach the issue because we find that, even were plaintiffs on sound legal ground with their waiver theory, their cause must nonetheless fail for inadequacy of proof.)

The foregoing facts, while not a complete recitation of the testimony elicited in plaintiffs' case in chief, are presented in their aspects most favorable to plaintiffs.

■■ ■ To establish a cause for breach of warranty of habitability (counts I through III), plaintiffs were required to prove, *inter alia*, that the home had a latent defect caused by improper design, material or workmanship in its construction which rendered the property unsuitable for use as a home. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) The evidence presented at trial did not provide the trier of fact with any proof of what in fact caused the odors that allegedly made the home uninhabitable. While there was evidence that the plumbing violated the State code in several respects, there was no evidence to link such violations to the odors. There was no evidence that the odor problem would be resolved even if the home were completely replumbed. The evidence failed to give any clue as to why the basement carpet was wet. Whether the pipes were loosely fitted, allowing for leaks, or whether the foundation was cracked, were both possible explanations for which no evidence was introduced from which to draw an inference on the issue of causation. The evidence as presented at trial gave cause for speculation only. Cf. *Nisbet v.*

*Yelnick* (1984), 124 Ill. App. 3d 466, 464 N.E.2d 781 (plaintiffs' proof of cracks in foundation resulting in flooding in basement of new home gave rise to reasonable inference that defendant builder caused defect).

Plaintiffs' evidence, moreover, was extremely tenuous on issues of latency and substantiality of the defects complained of. Marissa Fischer testified that she noticed an odor and observed the wet basement carpeting on her inspection of the home in March of 1981. The Fischers said they smelled the sewer odor almost immediately upon moving into the home in May of 1981. That odor, thus, was not "latent," and, as aforesaid, there was no evidence of a construction defect, latent or otherwise, that caused it. The evidence failed to prove that the odor rendered the home unsuitable as a residence. It was occupied from May 1981 until April 1982, and September 1982 until plaintiffs filed their suit against these defendants. An offer to purchase the home was made in 1983. The Fischers testified that the home was vacant for four months in 1982 because they were "choosey" about selecting appropriate renters. Finally, the record contains evidence that a condition attached to the $51,000 offer by the prospective purchaser in 1983 was that the basement traps and tiles be repaired on a shared basis at a maximum cost of $250 to plaintiffs. If such were in fact the extent of the defect and the cost of its repair, then it could hardly be found to be a "substantial defect."

■ Likewise, the trial court committed no error in directing verdicts for defendants on the fraud counts (counts IV through VII). There was no evidence that any of these defendants made any representations that they knew to be false or that they knowingly concealed any defects. There was no proof that plaintiffs relied on any statements made by defendants in making their decision to purchase the home. Lack of proof of scienter and reliance, at the very least, was fatal to these counts.

■ With respect to the counts based on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262ff) (counts VIII through XI), plaintiffs were required to prove that a misrepresentation of a material fact was made to them in connection with the sale of the home. (*Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448.) The only statement that could be construed as a misrepresentation here is salesman Rich McKee's statement that the smell Marissa Fischer noted upon her inspection of the premises "was" or "probably was" from a large pile of laundry. The odor described on that occasion by Marissa's testimony at trial was a "musty, mildewy" odor. The odor that allegedly periodically permeated the

home after the Fischers moved in was "sewer gas" smell. This evidence might lead to some remote speculation that the smell noted by Marissa in March 1981 was the same sewer-gas smell later noted, but is a far cry from proof that McKee did not accurately identify the source of the "musty, mildewy" odor Marissa had observed in his presence. Plaintiffs admitted at trial that McKee had offered to bring them back to the house any time they wanted for a further inspection prior to the closing date. Plaintiffs themselves chose not to go back. Thus it appears, even assuming that, contrary to McKee's suggestion, the odor noted on their inspection of the home was emanating from the same unknown source that caused the odor after the Fischers moved in, there is no evidence that McKee's statement went to a *material* fact. Apparently the Fischers did not consider the odor sufficiently offensive that they needed to recheck the premises before committing themselves to the installment contract to purchase. Having failed to prove either a misrepresentation or that McKee's statement concerned a material fact, plaintiffs' counts VIII through XI clearly could not survive defendants' motions for directed verdicts.

■ Finally, we find plaintiffs' issue concerning the trial court's denial of their post-trial motion to add counts XII through XIV without merit. Plaintiffs' theory is that such counts, alleging violations of section 2 of "An Act relating to installment contracts to sell dwelling structures" (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) were proved, and that their pleadings need only be conformed to entitle them to relief. Such is not the case. The evidence adduced by plaintiffs did not prove a violation of the statute. The statute at issue provides:

> "[A]ny installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice." (Ill. Rev. Stat. 1985, ch. 29, par. 8.22.)

The evidence of record establishes that at the closing in 1981 the sellers furnished, in lieu of a certificate of compliance, their express warranty that no notice of code violations had been received by them.

Plaintiffs' evidence of State code violations existing in 1983 does not, without more, justify a rescission of the installment contract under the aforecited statute. Therefore, the trial court cannot be said to have abused its discretion in denying plaintiffs' motion to supplement their complaint pursuant to Supreme Court Rule 616(c).

We have reviewed the balance of plaintiffs' arguments as set forth in their appellate briefs and find them similarly unavailing. For the reasons stated, we affirm the judgment of the circuit court of La Salle County.

Affirmed.

SCOTT, P.J., and STOUDER, J., concur.