DUSTIN CAINE JAMES, by his Parents and Next Friends, Thomas L. James and Brenda D. James, *et al.*, Plaintiffs-Appellants, v. SHIG YASUNAGA *et al.*, Defendants (Burnham City Hospital, Defendant-Appellee).

Fourth District No. 4—86—0796

Opinion filed June 29, 1987.

Robert I. Auler, of Auler Law Offices, P.C., of Urbana, for appellants.

Richard R. Harden and William J. Brinkmann, both of Thomas, Mamer & Haughey, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiffs appeal the entry of summary judgment in favor of defendant Burnham City Hospital (Burnham) on plaintiffs' negligence cause of action. Integral to the resolution of this dispute is the timing of an expert opinion report filed the same day a hearing on the motion for summary judgment was held, but after a deadline for disclosure of expert witnesses set by court order entered pursuant to Supreme Court Rule 220 (103 Ill. 2d R. 220) had passed.

We begin by considering two motions taken with the case. First, plaintiffs move pursuant to Supreme Court Rule 329 (87 Ill. 2d R. 329) to amend the record on appeal to include an additional portion of the deposition transcript of Dr. Shig Yasunaga, a second of three named defendants (although not a party to this appeal). The record reflects inclusion of only the initial 40 pages of the Yasunaga deposition transcript as an attachment to the plaintiffs' brief in opposition to a third defendant's motion for summary judgment presented before the trial court. That brief makes express reference to statements appearing within those first 40 pages of the transcript only. Plaintiffs aver that while only a portion of the transcript appears of record, the entire deposition was before the court during the October 22, 1986, hearing on the respective motions for summary judgment. They direct this court's attention to certain pages from the remainder of the deposition transcript as examples "of the factual testimony that

would be used to support the [plaintiffs'] complaint against ***
Burnham *** for negligence on the part of the nursing staff." Those
pages are attached to their brief and motion to amend on appeal.

Nothing in the record, however, indicates to our satisfaction that
the remaining portion of the Yasunaga deposition was ever directed to
the trial court's attention in relation to Burnham's motion. Plaintiffs
never cited from the latter portions of Dr. Yasunaga's deposition at
the trial level in opposition to a motion for summary judgment, al-
though they attempt to do so before this court on appeal. We cannot
consider upon review that which was not submitted to the trial court
when it rendered its decision. Plaintiffs' motion to amend is therefore
denied.

■ Second, Burnham asks this court to strike the statement of
facts portion of the plaintiffs' brief. Burnham's motion raises a failure
to comply with Supreme Court Rule 341, which calls for the state-
ment of facts to "contain the facts necessary to an understanding of
the case, stated accurately and fairly without argument or comment,
and with appropriate reference to the pages of the record on appeal."
(103 Ill. 2d R. 341(e)(6).) Burnham asserts the plaintiffs' brief is re-
plete with argument, conclusion, and unsupported accusations.

Counsel for the plaintiffs admitted during oral argument to a
good deal of "enthusiastic writing." Indeed, some of the comments
we find appearing throughout the plaintiffs' statement of facts are
highly conclusory and therefore inappropriate for a proper appellate
brief. To be fair, perhaps counsel is guilty only of overzealous advo-
cacy of his clients' position. The brief did comply with Rule 341(e)(6)
in other respects by making reference to the record and by setting
forth other fairly innocuous representations of fact. Where none of
the purported violations of supreme court rules are so flagrant as to
hinder or preclude review, the striking of a brief in whole or in part
may be unwarranted. (*Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 25,
436 N.E.2d 1068, 1070.) The motion to strike is denied. In reviewing
this matter we shall disregard any inappropriate statements.

What can be gleaned factually from the briefs and record is that
on April 2, 1984, the minor plaintiff Dustin James was admitted to
Burnham Hospital suffering from a high fever. Dustin was about two
months old at the time. The child remained in the hospital until April
4, when during the early morning hours he exhibited worsening condi-
tions. A decision was reached at around 8:30 a.m. to transfer the
child to Children's Memorial Hospital in Chicago. However, the trans-
fer was not made until some time in the afternoon. Upon his arrival
at Children's Memorial, the child was diagnosed as suffering from

meningitis and underwent emergency surgery. The affliction, though, left the child with a substantial if not total loss of hearing. Testimony and comment appearing in the record also indicate retardation and seizure activity are possibilities in the minor's future.

Counts III and IV of the plaintiffs' amended complaint, filed June 6, 1985, are directed at defendant Burnham. (Again, two private physicians are also named in the complaint, but they are not parties to this appeal.) Count III asserts a negligence cause of action on behalf of Dustin. The parents seek recovery under count IV. In their amended complaint, the plaintiffs essentially assert the following negligent acts or omissions on the part of the hospital staff: failure to report to hospital administration or to other physicians the lack of tests in light of the "observed classic symptoms" of the minor plaintiff which should have indicated the presence of meningitis; failure to independently review the treatment and diagnosis so as to intercede in the minor's case and provide a remedy; allowance of "grossly inadequate care and treatment" to be rendered the infant by the two named defendant physicians; failure to transfer the child sooner to a hospital with proper facilities, equipment or personnel; and failure to promptly arrange for transfer of the minor to Children's Memorial Hospital once a decision to transfer was made.

The plaintiffs' cause of action against Burnham therefore rests on whether the hospital's treatment, care, and diagnosis of the child based upon his symptoms failed to meet the appropriate standard of care, and whether any such failure proximately caused injury to the child. Of particular significance would be the applicable standard of care in relation to the delay between the worsening symptoms as noted, the decision to transfer, and the actual transfer itself..

As the case progressed, a pretrial conference was held on March 25, 1986, with all parties present. At the conclusion of that conference, the trial court entered an order pursuant to Supreme Court Rule 220 (103 Ill. 2d R. 220) setting forth a schedule for disclosure of expert witnesses. According to that schedule, plaintiffs were permitted 60 days to disclose their experts; defendants had 60 days thereafter to disclose their experts; and the identity of rebuttal experts was to be exchanged within an additional 60-day period. The cutoff date for all discovery was set for 60 days subsequent. The cause was allotted for trial in February 1987.

No pleadings filed for the express purpose of disclosing expert witnesses are reflected in the record before us. However, an expert for the plaintiffs was deposed. There are also no motions to compel disclosure filed by these parties. Nor do any motions for sanctions due

to noncompliance with the March 25, 1986, court order appear of record.

We calculate that the initial 60-day deadline for plaintiffs to disclose their expert witnesses ran on May 26, 1986. The second successive 60-day deadline for disclosure by the defendants was up on July 25, 1986. That same day, the deposition of Dr. Robert Boucek as an expert witness for the plaintiffs was taken. On September 5, 1986, Burnham filed its motion for summary judgment asserting the nonexistence of any genuine issue of material fact. Burnham's motion relied in part on excerpts from the deposition testimony of the plaintiffs' own expert, Dr. Boucek, to wit:

"Q. Have you formed an opinion regarding the care that was provided to Dustin James by Burnham City Hospital?

A. [Dr. Boucek] I think the care provided by the hospital was quite satisfactory, it was very good.

Q. Did you find any deviations from the standard of care that would be required of Burnham Hospital in the care that they afforded to Dustin James?

A. I'm sure the nursing staff is very uncomfortable. I think they did their job. I think the only thing that possibly could have been done, if they felt, and I don't think they did from reading the nursing notes that there is a major problem until that morning of the 4th around 8:00 in the morning, if they felt that the baby wasn't receiving appropriate care, they could have gone through the department head and received intervention. But I think until that time, they probably had no basis to take that action.

Q. And as of the morning of the 4th, the conduct of the nurses then was satisfactory, as far as you were concerned?

A. Yes, I think so.

Q. Did you find that there was any evidence, as of the 4th, given the symptoms that were observed, that the nurses failed to act appropriately in connection with Dustin's care?

A. No, I think they behaved quite appropriately.

Q. Given what they understood to be his condition and the attention he was getting?

A. Yes.

Q. You mentioned a call to the attention of the administration, the care that Dustin was receiving, do you feel that the failure by the nurses to do that on the morning of April 4 was a deviation from the standard of care?

A. I think not, because by that time, the transfer had been

ordered and I think that they assumed that the baby was on its way.

\* \* \*

Q. If you were to assume that the delay between \*\*\* 8:45 a.m. and 2:30 p.m. was waiting for the nurses to get word from the hospital in Chicago that they had a bed available, would you have criticism of the nurses of the hospital for this period of delay before the transfer was accomplished?

A. I think the nurses and the hospital are stuck. If they don't know that the patient is going to be received, I think it would be improper to put the patient on the road, not knowing if the receiving institution [Children's Memorial] indeed would receive that baby."

A hearing on Burham's motion was set for October 22, 1986. On September 22, 1986, the next 60-day deadline for exchange of rebuttal witnesses elapsed.

On the date of the scheduled October 22 hearing, plaintiffs filed a brief in opposition to Burnham's motion for summary judgment. Attached to that brief was the *curriculum vitae* and expert opinion of Claudia J. Anderson, R.N., an associate professor and director of research and evaluation at Northwestern University. Anderson had not previously been identified as an expert witness who would offer testimony or opinion.

At the conclusion of the October 22 hearing, the court found no genuine issue of material fact and granted summary judgment in favor of defendant Burnham City Hospital. Commenting on the timeliness of the Anderson report, the court stated:

"Now, I have a problem where we have a conference with all the parties represented by their attorneys, \*\*\* back in March of this year, and we all agree that certain disclosures are going to be made under Supreme Court Rule 220, that a trial setting is made in reliance upon that scheduled disclosure, [and] afterward there is no request for extension of time or other relief from the disclosure order that's entered, and that on the day summary judgment of one of the parties is to be heard, we have a brief and an entirely new expert disclosed in opposition to the summary judgment. The order is rendered meaningless if that kind of conduct is countenanced, and so I will make it clear in the record that I am, upon the oral motion of the Burnham City Hospital to strike the certified report of Claudia J. Anderson, R.N., which is filed by the plaintiffs in opposition to the motion by Burnham City Hospital for summary judg-

ment today and that Anderson has been disclosed, I guess, in the last few days was that the—.

COUNSEL FOR PLAINTIFF: That is correct, your Honor.

THE COURT: We won't quarrel about when the disclosure was; it was late, that being in the last few days.

PLAINTIFFS' COUNSEL: We mentioned a month ago we had a Ph.D. looking at it, but we did not furnish a name.

THE COURT: That doesn't change my thinking about it."

The court then entered a finding pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)) of no just reason to delay enforcement or appeal, and this appeal by the plaintiffs followed.

The court-ordered deadline constituting the discovery cutoff did not run until November 22, 1986 (a Saturday), or November 24. Trial was originally scheduled for February of 1987.

The parties' initial contentions on appeal focus on the timeliness aspect of the Anderson report in relation to the court's order pursuant to Supreme Court Rule 220. Plaintiffs now argue the trial court should have considered the Anderson report as timely filed in opposition to a motion for summary judgment, also maintaining her expert opinion was sufficient to establish a genuine issue of material fact. Burnham in turn asserts the plaintiffs' failure to disclose Anderson as an additional expert witness within the court-ordered schedule precludes allowing her report to serve as an expert's opinion on the issue of care.

The trial court expressly mandated disclosure according to its schedule and order entered under Supreme Court Rule 220 on March 25, 1986. Rule 220(b)(1) requires disclosure of an expert witness either at the first pretrial conference or within 90 days after the substance of the expert's opinion first becomes known to the party who intends to call such a witness, whichever is later. (103 Ill. 2d R. 220(b)(1).) In any event, the court "shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed." (103 Ill. 2d R. 220(b)(1).) Such disclosure should be conducted with the goal of insuring discovery regarding such experts is completed not later than 60 days before the anticipated start of trial. The rule further states:

"Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein *will result in disqualification of the expert as a witness.*" (Emphasis added.) 103 Ill. 2d R. 220(b)(1).

The language of the disqualification sanction contained in the rule is unequivocal. Here, plaintiffs did not present or disclose Claudia

Anderson as an expert witness until October 22, 1986, long after the initial 60-day requirement in which to do so ran. Plaintiffs did not seek leave to amend or revise the court's schedule if they were having difficulty locating an expert witness. The parties clearly knew the deadlines, which were arrived at during a pretrial conference.

■ The determination of the appropriate sanction for failure to comply with a discovery order lies within the sound discretion of the trial court. (*Curry v. Summer* (1985), 136 Ill. App. 3d 468, 483 N.E.2d 711.) The imposition of sanctions under Rule 220 for a party's noncompliance with discovery rules is also within the discretion of the trial judge. (*Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 171-72, 497 N.E.2d 1022, 1024.) That decision will not be interfered with on review absent a clear showing of abuse, with each case to rest on its own unique factual setting.

■ We cannot say abuse is apparent here. The discovery rules and schedule as set forth by court order were not complied with. We are aware of two other appellate decisions which upheld the sanction of disqualification under Rule 220 where the attempted disclosure occurred when a trial was halfway over (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140) and where disclosure was made only three days before the scheduled start of trial (*Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 62). In those cases, the immediacy of trial justified disqualification. Here, noncompliance with a court order imposing an affirmative obligation on *all* parties to disclose their experts in a manner designed to insure prompt discovery before trial warrants disqualification of a witness whose opinion is offered in opposition to a motion for summary judgment. Granted, the effect of the sanction is severe, but we support the trial court in the enforcement of its discovery schedule.

Plaintiffs note at the time of the hearing the court-ordered discovery cutoff was still another month away, and the scheduled beginning of trial was three months hence. They assert the witness could have been deposed within this time frame without undue prejudice or inconvenience and without setting back the anticipated trial date. We view these contentions as irrelevant if a schedule for disclosure pursuant to Rule 220 is to have any force and effect.

Plaintiffs next attempt to counter the effect of Rule 220 by arguing the opinion of Claudia Anderson was tendered as that of a rebuttal witness. They construe Burnham's reliance on a portion of Dr. Boucek's sworn expert witness deposition testimony in support of its motion for summary judgment as Burnham's election to treat and identify Boucek as its own expert witness. Because Burnham's motion

was filed on September 5, 1986, plaintiffs believe they then had 60 days from that date to tender a witness in rebuttal. Using this logic, plaintiffs conclude the Anderson report was timely filed on October 22.

Plaintiffs' position is untenable for several reasons. First, when Burnham quoted from Dr. Boucek's testimony to support its motion for summary judgment, this did not somehow transform Boucek into defendant's own named expert. Some of Dr. Boucek's statements as a deposed expert witness simply indicated he thought the care afforded the minor plaintiff by the hospital nursing staff "was quite satisfactory" or "very good," and Burnham pointed out this testimony in arguing that no material issue of fact existed. Second, even assuming Boucek did somehow become Burnham's own expert witness, plaintiffs still failed to meet the original court-ordered deadline for disclosure of rebuttal witnesses, which was given as 180 days after the March 25 pretrial conference (or about September 23). Carrying that assumption one step further, defendant's motion for summary judgment was filed September 5, 1986, or about 2½ weeks before the rebuttal deadline. If Burnham's motion did in fact constitute the naming of its own expert defense witness, plaintiffs could have responded by: objecting to "late disclosure" by Burnham; seeking leave to revise the schedule to be given more time to obtain a rebuttal witness; or still disclosing their expert within the appropriate time frame.

Certainly at the time Boucek was deposed plaintiffs were put on notice that their own expert was not critical of the care afforded the minor by the Burnham Hospital staff. Plaintiffs had an affirmative duty to timely seek out contrary expert opinion and request a modification of the disclosure schedule should they so require. They did not do so, however.

Plaintiffs next seek to characterize the Anderson report as a counteraffidavit filed in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005). According to that section, a defendant may at any time move for summary judgment. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(b).) The opposing party may then "prior to or *at the time of the hearing on the motion* file counteraffidavits." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Plaintiffs therefore aver that the Anderson "counteraffidavit," filed on the date of the hearing, was proper and should have been considered in opposition to the motion. While Burnham asserts the report is legally insufficient to serve as an affidavit according to Supreme Court Rule 191 (87 Ill. 2d R. 191(a)) because it consists of unsupported conclusions

rather than facts admissible in evidence, plaintiffs respond that any technical deficiencies in the report can be corrected later; it is substance and not form, plaintiffs argue, that should control.

Both parties thus pay substantial attention in their briefs to the sufficiency, or lack thereof, of the Anderson report as a counteraffidavit. We need not consider these arguments. Our conclusion rests on a more basic precept: plaintiffs should not be able to circumvent the result under Rule 220 by attempting to depict the report as a counteraffidavit filed on the date of a summary judgment hearing according to section 2—1005. Of course, any effective affidavit shall contain facts which the affiant could competently testify to at trial if sworn as a witness. We have already determined the plaintiffs cannot use the witness in question at trial according to the court's order of March 25, 1986, and the literal terms of Rule 220. It would then be inconsistent to permit that same witness' opinion to be used to form the basis of a counteraffidavit in opposition to a motion for summary judgment.

▆▆▆ The ultimate issue in this case is whether summary judgment was properly entered in favor of Burnham. Summary judgment is appropriate only when there exists no genuine issue of material facts which would otherwise require resolution by trial (*Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614, 619, 504 N.E.2d 791, 794), and should only be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The purpose of summary judgment is not to try issues, but to determine whether any triable issue exists. (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 221 N.E.2d 633.) While use of the summary judgment procedure is encouraged as an aid in the expeditious disposition of a lawsuit, it is nevertheless a drastic means of disposing of litigation and should be allowed only where the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) A court in considering the motion is therefore duly bound to construe the entire record strictly against the movant and liberally in favor of the nonmovant. *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402; *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329.

▆▆ Plaintiffs ask that the drastic sanction of summary judgment not be imposed here and that they be allowed to have a jury decide their case against Burnham. However, nothing has been timely offered to show a failure to comply with the proper standard of care, or to show that such failure resulted in the complained-of injuries. The

quoted portions of Dr. Boucek's testimony in support of Burnham's motion indicate no deviation from any standard of care by the hospital nursing staff. Dr. Boucek's statements also reveal his opinion that the hospital's care of the child was appropriate. Although Dr. Boucek did state if the nursing staff was not totally satisfied with the diagnosis and care afforded the child then perhaps they could have sought intervention through a department head, this alone is not enough. Our review of the entirety of his deposition testimony and the record as a whole satisfies us that no deviation from the standard of care was established.

Finally, plaintiffs attempt to invoke this court's decision in *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 490 N.E.2d 181, while asserting summary judgment here should be reversed. *Hansbrough* stands in part for the proposition that a medical malpractice plaintiff should be allowed every reasonable opportunity to establish his or her case; it is only when the record indicates a plaintiff has failed after extensive opportunities to demonstrate he or she can show negligent acts or omissions through expert testimony or other evidence that summary judgment should be affirmed. (141 Ill. App. 3d 538, 549, 490 N.E.2d 181, 188.) *Hansbrough*, though, contains one significant distinguishing feature from this matter: there the trial court did *not* enter an order pursuant to Supreme Court Rule 220 setting forth deadlines for disclosures of experts and scheduling trial 60 days after the discovery cutoff. Rather, this court determined the plaintiffs in *Hansbrough* were not absolutely required to file a counteraffidavit by the time of an initial hearing on the defendants' motion for summary judgment only 10 months after the complaint was filed.

For the reasons stated, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.