DAVID R. BLEDSOE *et al.*, Plaintiffs-Appellants, v. PAULINE CARPENTER, Defendant-Appellee.

Third District   No. 3—87—0320

Opinion filed December 4, 1987.

Bozeman, Neighbour, Patton & Noe, of Moline (Robert J. Noe, of counsel), for appellants.

Alan G. Blackwood, of Schrager, Blackwood & Nowinski, P.C., of Moline (Robert P. Swanson, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, David and Sandra Bledsoe, appeal from the judgment of the circuit court of Rock Island County which, after a bench trial, entered judgment in favor of the defendant, Pauline Carpenter, and refused to grant rescission of a real estate installment contract. The Bledsoes contend that the contract failed to comply with the requirements of section 2 of "An Act relating to installment contracts to sell dwelling structures" (Ill. Rev. Stat. 1985, ch. 29, par. 8.22) (the Act). Carpenter contends that the contract does satisfy the statutory requirements or that, in the alternative, the Bledsoes are guilty of *laches* and that the action is barred.

The Bledsoes and Ronald L. Carpenter executed a real estate installment contract on December 10, 1980, for the sale of an eight-unit apartment building. Subsequently, Ronald Carpenter assigned his interest in the contract to his mother, the defendant, Pauline Carpenter. The contract, which contained a selling price of $205,460 for the building, provided for monthly payments of $2,174.49. The Bledsoes have received all rental income from the property from the date the contract was executed. Sometime after the Bledsoes purchased the property, certain violations were allegedly noted by a government official. In May 1984, the Bledsoes inquired as to a possible sale of the premises but were informed that the value of the property was less than the original purchase price.

In July 1985, Carpenter filed suit to obtain specific performance on the contract, alleging that the Bledsoes were 20 months delinquent in their payments on the contract. No question was raised as to the application of the statute in that action. The trial court, in that case, entered an order in February 1986 ordering the Bledsoes to specifi-

cally perform the contract. No appeal was taken in that case. Three months after the ruling in that case, the Bledsoes filed the present case seeking rescission of the contract on the ground that it did not comply with the statutory requirements. The trial court entered judgment in Carpenter's favor and the Bledsoes appeal.

The main issue in this case arises from the language contained in the statute and paragraph 14 of the installment contract, which purports to satisfy the statutory requirements. Section 2 of "An Act relating to installment contracts to sell dwelling structures" states:

> "After the effective date of this Act, any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section can not be waived by the buyer or seller." (Ill. Rev. Stat. 1985, ch. 29, par. 8.22.)

The paragraph of the articles of agreement for warranty deed which purports to comply with the statute reads as follows:

> "14. Seller's Warranty. The seller, as owner of the premises, warrants that no notice has been issued and received by the seller or seller's agent from any city, village or other governmental authority of a dwelling code violation, which presently exists in any dwelling structure on the premises covered by this contract."

An examination of the passage of time since the execution of the contract, the actions of the parties, and the wording of the seller's warranty when compared with the statute lead us to the conclusion that the trial court was correct in its determination. We affirm for the following reasons.

■■ ■ Initially, we find that the plaintiff is guilty of *laches*. For *laches* to bar a suit, the delay must be such that, taken with other circumstances, it has caused prejudice to the defendant. (*Baumrucker v. Brink* (1939), 373 Ill. 82, 25 N.E.2d 51.) However, the question of *laches* does not turn merely on the passage of time but depends on

whether the plaintiff is chargeable with want of due diligence. When this want of due diligence is coupled with the fact that there is a change in parties or subject matter so as to render it inequitable to grant relief, relief will be refused without reference to a statutory period of limitations. (*Miller v. Siwicki* (1956), 8 Ill. 2d 362, 134 N.E.2d 321.) The facts of this case dictate that the doctrine of *laches* is applicable.

■ After the contract was executed, the Bledsoes were allegedly notified of certain code violations. Once this knowledge was received, it appears as though the Bledsoes were in a position to file suit for an alleged breach of the express seller's warranty. In May 1984, while some 6 months' delinquent on their payments, the Bledsoes inquired as to a sale of the property and found that it had lost value. Further, approximately five years after execution of the contract, Carpenter sued for specific performance on the contract and was granted relief. Again, the Bledsoes failed to seek rescission on the grounds of a voidable contract. Next, it was not until Carpenter was granted specific performance on the contract that the Bledsoes attempted to rescind the contract on the basis of noncompliance with the statute. And finally, as we noted earlier, Pauline Carpenter was not an original party to the contract. She took her interest, via a quitclaim deed, from Ronald Carpenter. The change in parties, the decreased value of the property, plus the lapse of time, indicate such a change in circumstances and such substantial prejudice to Carpenter that it would be inequitable to grant the relief at this time.

■ The Bledsoes contend that *laches* is not an applicable defense in this case on the grounds that their suit was timely filed 10 months after the decision in the Rock Island County case of McEchron v. Stevenson, 83 LM 472. We find this argument to be without merit, as McEchron is distinguishable on its facts. In McEchron, the wording in question was contained in an offer of purchase and was unlike the language in the present case contained in the articles of agreement for warranty deed. Second, there was evidence presented that notice had actually been received by the sellers or their agents. Third, the trial court concluded that no certificate of compliance or express warranty had been executed preceding the execution of the article of agreement for warranty deed. And finally, the McEchron court noted that the warranty contained in the offer to purchase appeared to be couched in terms so as to avoid the purpose of the law. The facts of McEchron are simply not present in this case.

■ We have also determined that the Bledsoes should be estopped from asserting noncompliance with the statute. Although the

statute specifically states that the parties cannot waive the requirements of the statute, estoppel may bar them from asserting their rights. Waiver, as distinguished from estoppel, depends upon what a party does or intends to do without regard to the effect of his conduct upon an opposing party. (*Pantle v. Industrial Comm'n* (1975), 61 Ill. 2d 365, 335 N.E.2d 491.) In contrast, estoppel focuses not on the party's intent, but rather on the effects of his conduct on the opposing party. Therefore, even if a party has not waived a known right, he may be estopped from enforcing it. (*Saverslak v. Davis-Cleaver Produce Co.* (7th Cir. 1979), 606 F.2d 208.) Both parties agree that paragraph 14 was intended to comply with the statute. This is supported by a prior case. In *Denton v. Hood* (1984), 122 Ill. App. 3d 813, 461 N.E.2d 1069, this court had occasion to consider paragraph 14 in another context. *Denton* dealt with the applicability of paragraph 14 to zoning violations. While this court determined that the express warranty provision was not intended to cover zoning ordinance violations, we did have cause to examine the contents of paragraph 14. In *Denton*, we stated that

"[w]e have set forth [paragraph 14] previously, and, *as both parties accept*, the provision and its warranty were included so as to comply with section 2 of 'An Act relating to installment contracts to sell dwelling structures.' (Ill. Rev. Stat. 1981, ch. 29, par. 8.22.)" (Emphasis added.) (*Denton v. Hood* (1984), 122 Ill. App. 3d 813, 816, 461 N.E.2d 1069, 1072.)

What was said in *Denton* is equally applicable in this case. Both parties agreed that, at the time the contract was executed, paragraph 14 was in compliance with the statute. It is apparent that this paragraph, part of the standard articles of agreement for warranty deed used in Rock Island County, was drafted with the intention of complying with the statute. This being the case, we will not now permit a party who enters into a less than desirable real estate transaction to use the same clause as a weapon in an attempt to rescind the contract.

■ Finally, we have determined that paragraph 14 substantially complies with the statutory requirements. Section 2 of the Act requires that any real estate installment contract contain (1) a certificate of compliance, or in its absence (2) an express written warranty that no notice of any building code violation has been received within 10 years of the execution of the contract or (3) if notice was received, a list of all such notices and a detailed statement of all violations. Additionally, section 1 of the Act defines the certificate of compliance as follows:

" 'Certificate of compliance' means an affidavit executed by a contract seller stating that the dwelling structure was inspected within 30 days before the contract was executed by an Inspector of the Municipality or County wherein the premises is located, and that at the date of the execution of the contract the dwelling structure is not in violation of any dwelling code." (Ill. Rev. Stat. 1985, ch. 29, par. 8.21.)

A comparison reveals that the certificate of compliance only warrants that there are no dwelling code violations as of the date of the sale, whereas the express written warranty covers notices received within 10 years of the execution of the contract as to violations existing prior to the execution of the contract. However, if any such notice was received, the seller submits neither the certificate nor the warranty, but rather a list of the prior notices and a detailed statement of the violations.

The warranty at question here states that no notice has been received as to a violation which presently exists. Because the warranty fulfills the basic purpose of the statute, which is to furnish information for the protection of the purchaser as to the condition of the property he is purchasing (see *Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 323 N.E.2d 148), we hold that paragraph 14 of the articles of agreement for warranty deed is in substantial compliance with section 2 of the Act.

■ We would make one additional comment on this case. Neither violation of an express warranty nor statutory noncompliance was raised as defenses in the specific performance suit. Additionally, the merits of such defenses or the applicability of the principle of *res judicata* are not at issue in this case. However, where the existence and validity of a contract is once put in issue and adjudicated, that issue is conclusively determined insofar as the parties and their privies are concerned. (See, *e.g., Seno v. Franke* (1957), 16 Ill. App. 2d 39, 147 N.E.2d 469.) In order for the court to grant Carpenter the relief of specific performance in the prior suit on this contract, it is obvious that both the existence and validity of the contract have been determined. Therefore, we are also of the opinion that the issue of a valid contract was *res judicata* in this case.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.