THOMAS G. HAY *et al.*, Plaintiffs and Counterdefendants-Appellants, v. RUDOLPH ALBRECHT, JR., *et al.*, Defendants and Counterplaintiffs-Appellees (State Bank of Winslow, Defendant-Appellee).

Second District No. 2—87—0941

Opinion filed May 5, 1988.

LINDBERG, P.J., specially concurring.

Rodger K. Hay, of Warren, for appellants.

N. Richard Elliott, of Vincent, Roth & Elliott, of Galena, for appellees Rudolph Albrecht, Jr., and Rojean Albrecht.

JUSTICE DUNN delivered the opinion of the court:

Plaintiffs, Judith and Thomas Hay, filed a complaint for rescission of an installment contract to purchase a 200-acre farm from defendants, Rojean and Rudolph Albrecht. The Albrechts assigned the contract to defendant, State Bank of Winslow, as security for certain loans. The Hays sought rescission on the basis that there was a house on the farm and the contract did not comply with section 2 of "An Act relating to installment contracts to sell dwelling structures" (Act) (Ill. Rev. Stat. 1985, ch. 29, par. 8.22). The Albrechts filed a counterclaim for specific performance and reformation of the contract so that it would comply with section 2 of the Act. The trial court granted the

relief requested by the Albrechts and refused to rescind the contract. On appeal, plaintiffs contend that they were entitled to rescission as a matter of law.

Section 2 of the Act states as follows:

> "After the effective date of this Act, any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract, or, (ii) if any such notice of violation had been received, a list of all such notices so received with a detailed statement of all violations referred to in such notice. The requirements of this section cannot be waived by the buyer or seller." (Ill. Rev. Stat. 1985, ch. 29, par. 8.22.)

Section 1 of the Act defines a certificate of compliance as an affidavit executed by the contract seller stating that the dwelling structure has been inspected by an inspector of the municipality or county where it is located in the 30 days prior to the execution of the contract and that, as of the date of the execution of the contract, the structure is not in violation of any dwelling code. (Ill. Rev. Stat. 1985, ch. 29, par. 8.21.) It is undisputed that the installment contract in question did not comply with section 2.

Defendants asserted at trial that section 2 of the Act is not applicable to the installment contract between the Hays and the Albrechts because the house on the farm was only an incidental part of the agreement. Defendants argued that if this provision is applicable, reformation of the agreement should be granted so it would comply with section 2. Defendants' reformation argument was based upon the following language in the agreement:

> "The parties intend to contract in conformity with all applicable laws and ordinances in effect at this date. Any provisions hereof which violate such law or ordinance in whole or in part, is amended so far as necessary to remove the discrepancy. All implied provisions thereof are adopted. Any mandatory provisions prescribed thereby shall be supplied by construction or reformation, as fully as a court of equity is able to do so."

Defendants also raised the affirmative defense of *laches* at trial, not-

ing that the installment contract was executed on April 19, 1982, but plaintiffs did not file their action for rescission until April 20, 1987.

Under the terms of the agreement between the Hays and the Albrechts, the purchase price for the farm was $300,000. The Hays agreed to make a down payment of $54,000 and were given a credit of $10,625 for a debt they agreed to assume. The remaining sum of $235,375 was to be paid in installments over a period of 10 years at an interest rate of 10%.

It is undisputed from the trial testimony of Thomas Hay and Rudolph Albrecht that the condition of the buildings on the farm had deteriorated substantially since April 19, 1982, especially the barn. Thomas Hay testified that, at his request, Dale DeVries of P & D Appraisal Company appraised the farm in April 1987. According to this appraisal, the farm was worth $135,000. Hay admitted that his decision to seek rescission had nothing to do with any dwelling code violations and that he eventually intended to have all the buildings on the farm bulldozed. Rudolph Albrecht testified that he received no notices from any governmental authority concerning dwelling code violations for the house on the farm in the 10-year period prior to the execution of the installment agreement. The trial judge denied plaintiffs' claim for rescission and granted the Albrechts' counterclaim for reformation, adding a provision to the contract which expressly warrants that the Albrechts and their principals or agents did not receive any notices of dwelling code violations from any governmental authority during the 10-year period prior to the execution of the installment agreement. The trial judge also granted the Albrechts' counterclaim for specific performance and awarded damages in the amount of $16,819.69 as a result of arrearages on the installment payments.

■ Plaintiffs contend that reformation is not an appropriate remedy when an installment contract to purchase a dwelling structure does not comply with section 2 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 8.22). The purpose of section 2 is to furnish information to the buyer concerning the condition of the subject property so that the buyer will not have to search various governmental records or have the house inspected for possible violations of municipal and county ordinances and other regulatory provisions. (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 116, 323 N.E.2d 148, 151.) This purpose cannot be achieved unless the required information is provided at or prior to the time of purchase. This factor militates strongly against permitting reformation of installment contracts for the purchase of dwelling structures which do not comply with section 2. Although the contract in question contains a provision which states that the parties intend

that the agreement conform to all legal requirements and that amendment or reformation should be used to achieve that end if necessary, it can be presumed that most contracting parties intend their agreement to conform to all legal requirements. If it were proper to grant reformation whenever contracting parties intended to comply with all legal requirements, but failed to do so, reformation could be granted in almost all cases involving installment contracts which do not comply with section 2 of the Act, effectively eviscerating the right to rescission granted to buyers in that provision. The trial court erred by attempting to circumvent section 2 of the Act by granting reformation.

■ Defendants contend that section 2 is not applicable to the contract in the instant case because the farm was the primary subject matter of the agreement and the house located on the farm was only an incidental element of it. We rejected a similar argument in *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 458 N.E.2d 616. In *Hettermann*, the buyer purchased a tavern which had an apartment located on the premises. The trial court ruled that section 2 was not applicable because the apartment was only an incidental part of the agreement. This court reversed, noting that the building came within the definition of a dwelling structure set forth in section 1 of the Act and concluding that section 2 was applicable, even though a portion of the premises was used for business purposes. (*Hettermann*, 120 Ill. App. 3d at 690-91, 458 N.E.2d at 621-22.) The house on the farm is clearly a dwelling structure under the definition of that term set forth in section 1 of the Act. Under *Hettermann*, section 2 is applicable to the installment agreement in the case at bar, even though a substantial portion of the land purchased was used for business purposes.

■ Defendants contend that plaintiffs' action for rescission was barred as a result of *laches*. The defense of *laches* is only applicable if there has been unreasonable delay in asserting a right coupled with prejudice to the opposing party as a result of the delay. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 941, 494 N.E.2d 795, 800.) We consider a five-year delay in filing an action for rescission of a contract based upon the absence of certain information required by statute to be clearly unreasonable. The prejudice to the Albrechts caused by this delay is readily apparent, since the testimony of Thomas Hay indicates that the value of the farm decreased by approximately $165,000 during the five-year period in question.

The trial judge expressed a reluctance to apply the doctrine of *laches*, noting the strong language employed by this court in *Hetter-*

*mann* with regard to the buyers' right of rescission under section 2 of the Act. In *Hettermann*, however, this court did not consider the issue of whether *laches* was applicable. The court held in *Bledsoe v. Carpenter* (1987), 163 Ill. App. 3d 823, 516 N.E.2d 1013, that plaintiffs' suit for rescission under section 2 of the Act was barred by *laches*. (*Bledsoe*, 163 Ill. App. 3d at 827, 516 N.E.2d at 1015.) The plaintiffs in *Bledsoe* filed suit nearly 5½ years after the execution of the installment contract in question. Two of the factors the court cited to justify its decision that *laches* was applicable were the lapse of time between the execution of the contract and the filing of the rescission action and the decrease in the value of the subject property during that period. These same factors strongly support the application of *laches* as a bar to plaintiffs' action for rescission in the instant case.

 A trial court's judgment may be sustained upon any ground warranted by the record, regardless of whether the trial court relied upon that particular ground. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) The record clearly reveals that the Hays delayed unreasonably in asserting their right to rescission and that granting rescission would result in substantial prejudice to the Albrechts, as a result of the substantial decrease in the value of the farm. Accordingly, we affirm the judgment of the circuit court of Jo Daviess County on the ground that plaintiffs' action for rescission was barred by *laches*.

Affirmed.

INGLIS, J., concurs.

PRESIDING JUSTICE LINDBERG, specially concurring:

I join in the result of the majority opinion. However, I disagree with the conclusion of the majority on the issue of reformation and would affirm the trial court on that issue. The objective of the statute can be achieved by reformation of the installment contract without imposing the unduly harsh penalty of rescission upon the seller (see *Fisher v. G. & S. Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022), particularly where no building code violations were alleged to exist or to have existed at the time of entering into the installment contract.