DAVID SPILLYARDS, Indiv. and on Behalf of All Others Similarly Situated and Derivatively on Behalf of Hartmarx Corporation, Plaintiff-Appellant, v. A. ROBERT ABBOUD et al., Defendants-Appellees.

First District (5th Division)   Nos. 1—93—3866, 1—94—0075 cons.

Opinion filed February 23, 1996.—Rehearing denied April 3, 1996.

---

664

Holstein, Mack & Klein, of Chicago (Robert A. Holstein, Aron D. Robinson, and Gina R. Fietsam, of counsel), for appellant.

Susan Getzendanner, Charles F. Smith, and Michael E. Gehring, all of Skadden, Arps, Slate, Meagher & Flom, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, David Spillyards, an individual shareholder of defendant, Hartmarx Corporation (Hartmarx), appeals from the dismissal, pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), of his third amended class action and derivative complaint and amended Rule 224 petition (134 Ill. 2d R. 224). Plaintiff's complaint[1] was brought against the defendant directors of

---

[1] All references to "plaintiff's complaint" in this opinion are made to plaintiff's third amended complaint.

Hartmarx who allegedly approved the sale of a minority block of Hartmarx common stock to Traco International, N.V., and issued an unrelated false and misleading prospectus. Plaintiff's derivative counts alleged that the defendants breached their fiduciary duties by engaging in self-dealing for the purpose of entrenchment by approving the Traco transaction (count I); by making allegedly false statements in a July 17, 1991, prospectus unrelated to the Traco transaction (count II); by failing to "shop" the Traco transaction (count III); and by conspiring to commit the breaches alleged in counts I, II, and III (count IV). Plaintiff's class counts (counts V through VIII) virtually mirrored the allegations in counts I through IV but alleged damage to the putative class rather than the corporation. The trial court dismissed the complaint, finding plaintiff's claims were derivative and could not be brought since the plaintiff failed to allege a presuit demand on the Hartmarx board of directors or particularized facts showing why demand was futile.

Plaintiff's appeal raises the following issues: (1) whether plaintiff's claims were derivative, individual or both; (2) whether plaintiff's derivative claims alleged sufficient facts to show that presuit demand upon Hartmarx's board of directors would have been futile; and (3) whether plaintiff's complaint stated causes of action for breach of fiduciary duty by engaging in self-dealing, failing to "shop" the minority block of stock, and conspiracy.[2] These issues will be determined by application of the substantive law of Delaware since Hartmarx is incorporated in that State. *Seinfeld v. Bays* (1992), 230 Ill. App. 3d 412, 595 N.E.2d 69; *Libco Corp. v. Roland* (1981), 99 Ill. App. 3d 1140, 426 N.E.2d 309 (on issues related to corporate governance, Illinois courts apply the law of the State of incorporation).

---

[2]The plaintiff's brief on appeal raises no argument with respect to the dismissal of derivative count II and class count VI, which alleged that the defendant directors breached their fiduciary duty by making several misleading statements and material omissions in a July 17, 1991, prospectus. The issuance of that prospectus was unrelated to the Traco transaction. By failing to argue or cite supporting authority relative to the dismissal of counts II and VI of his third amended complaint, plaintiff has waived any error in that regard. *E.g., Bank of Illinois v. Thweatt* (1994), 258 Ill. App. 3d 349, 630 N.E.2d 121; see 155 Ill. 2d R. 341(e)(7) (points not argued in an appellant's brief are waived and shall not be raised in the reply brief or in oral argument).

## II. Standing[3]

### A. Classification of Claims

In reviewing the merits of the instant appeal, we note that motions to dismiss pursuant to sections 2—615 and 2—619 admit all well-pleaded facts together with all reasonable inferences that can be gleaned from those facts. (*E.g., Reuben H. Donnelley Corp. v. Brauer* (1995), 275 Ill. App. 3d 300, 655 N.E.2d 1162 (section 2—615); *American Health Care Providers, Inc. v. County of Cook* (1994), 265 Ill. App. 3d 919, 638 N.E.2d 772; *Mayfield v. ACME Barrell Co.* (1994), 258 Ill. App. 3d 32, 629 N.E.2d 690 (section 2—619).) They do not, however, admit conclusions of law or conclusions of fact unsupported by allegations of specific fact upon which those conclusions rest. (*E.g., Barry Mogul & Associates, Inc. v. Terrestris Development Co.* (1994), 267 Ill. App. 3d 742, 643 N.E.2d 245; *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 690.) A motion to dismiss pursuant to section 2—615 attacks the legal sufficiency of the complaint whereas a section 2—619 motion raises defects or defenses that negate plaintiff's cause of action completely or refute crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific fact. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 639 N.E.2d 1282.) In ruling on the latter motion, the court may consider pleadings, discovery documents and affidavits submitted by the parties. (*American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 690.) Appellate review of a dismissal pursuant to either section is *de novo* (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 619 N.E.2d 732; *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 690) and does not require deference to the trial court's reasoning (*e.g., Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.* (1994), 261 Ill. App. 3d 338, 633 N.E.2d 1003; *Employers Mutual Cos. v. Skilling* (1994), 256 Ill. App. 3d 567, 629 N.E.2d 1145). On review, the appellate court must consider whether a genuine issue of material fact should have precluded dismissal or, absent such issue of fact, whether dismissal is proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732.

---

[3]In order to comply with appellate court page limitations specified by revised Supreme Court Rule 23 (166 Ill. 2d R. 23), discussion of a jurisdiction issue raised in case number 1—93—3866 has been designated nonpublishable and can be found in the full opinion of *Spillyards v. Abboud*, Docket Nos. 1—93—3866, 1—94—0075 cons.

The plaintiff's complaint alleged that the individual defendants, other than Elbert Hand (who was president, chairman and chief executive officer), served as directors of Hartmarx and received annual retainers of approximately $20,000 and certain stock options. The complaint stated that, since November 30, 1989, Hartmarx revenues, market and book values "significantly declined." Hartmarx's net worth, which was $303 million in 1991, declined to $64.6 million as of August 31, 1992. For the quarter ended August 31, 1992, Hartmarx reported a $213 million loss, bringing total losses for the past 10 consecutive quarters to $328,145,000.

The complaint further alleged that on or about September 18, 1992, Hartmarx entered into an agreement with Traco International, N.V., whereby, for a total aggregate payment of $30 million, Traco purchased 5.7 million shares of new Hartmarx common stock (18.3% of the outstanding common stock). In addition to the stock, Traco received two seats on Hartmarx's board of directors and the right to purchase an additional 1.6 million shares of common stock over the following three years. As a condition of the sale agreement, Traco was required to vote its common stock for the director nominees of Hartmarx's board of directors and Traco was required to refrain from any public efforts to control or influence the management, board of directors, or policies of Hartmarx. The defendant directors approved the terms of the agreement by a special meeting, held by telephone conference, on Sunday, September 20, 1992, in what the plaintiff alleges "appears to be Defendant Directors' attempt to counteract the huge losses in net worth and the resulting precarious position of Hartmarx."

Additional averments alleged that Traco was controlled by Abdullah Bakhsh, who had a professional and/or personal relationship with defendant director A. Robert Abboud, and that Bakhsh was "widely known to be a passive investor." The plaintiff also alleged that the voting restrictions provided in the agreement evidenced the defendant directors' "attempt to maintain and perpetuate control of the Corporation and to entrench the current Defendant Directors" since Traco, the largest shareholder, was required to vote for the board's nominees for directors.

Further allegations stated that the Traco transaction necessitated a board amendment to a provision in the stockholder's "Rights Agreement." (That provision gave Hartmarx shareholders the right to purchase shares of Hartmarx common stock at a 50% discount exercisable when an "acquiring person" obtained more than 15% of the company's outstanding shares.) The plaintiff alleged that the defendant directors sought to "avoid triggering" the "Rights Agree-

ment" and "manipulated" that agreement by amending the definition therein of an "acquiring person" to specifically exclude the Traco transaction.

Attached to plaintiff's complaint, as an exhibit, was a copy of the minutes for the board of directors' meeting held on September 20, 1992.[4] The minutes showed that the Traco transaction had been negotiated by outside legal counsel and a special committee appointed by the board of directors consisting of three outside directors. The minutes also disclosed that, prior to approving the terms of the Traco transaction, the directors were advised by Hartmarx's outside legal counsel and by investment bankers from the First Boston Corporation, Hartmarx's financial advisors. Hartmarx's legal counsel advised the board that approval of the transaction required amendments to the corporation's stockholder rights plan and the corporate bylaws. Representatives from the First Boston Corporation indicated that the Traco transaction was "fair" and recognized the need for Hartmarx to obtain additional equity "to help [it] renegotiate its senior debt, and to provide financial flexibility and additional book equity." According to the minutes, after presenting questions to legal counsel and First Boston representatives and after further discussion, the directors unanimously approved the Traco transaction and the requisite amendments to the "Rights Agreement" and corporate bylaws.

■ In reaching the merits of the instant appeal, we must first determine whether the plaintiff's claims are derivative, so as to require presuit demand, individual or both. As stated in *Kramer v. Western Pacific Industries, Inc.* (Del. 1988), 546 A.2d 348:

> "Whether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to prevail." (546 A.2d at 352, citing *Elster v. American Airlines, Inc.* (Del. Ch. 1953), 100 A.2d 219, 221-23.)

In a shareholder's derivative suit, the shareholder sues on behalf of the corporation for harm done to it whereas, in a direct action, the shareholder brings suit individually and/or on behalf of the class of shareholders for injuries done to them in their individual capacities. Recovery in the former inures to the corporation while recovery in the latter inures to the individual shareholder or class of shareholders. *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348.

■ To have standing to sue individually, rather than derivatively

---

[4]According to the minutes, directors Jeffrey A. Cole and Raymond F. Farley did not participate in the meeting.

on behalf of the corporation, the plaintiff must allege a special injury, "either 'an injury which is separate and distinct from that suffered by other shareholders,' or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." (*Moran v. Household International, Inc.* (Del. Ch. 1985), 490 A.2d 1059, 1070, quoting 12B W. Fletcher, Fletcher Cyclopedia of Corporations § 5921, at 451 (rev. perm. ed. 1984) (hereinafter Fletcher Cyclopedia of Corporations), *aff'd* (Del. 1985), 500 A.2d 1346; see also *Lipton v. News International, Plc* (Del. 1986), 514 A.2d 1075.)[5] In determining the nature of the wrong alleged, a court must look to "the body of the complaint, not to the plaintiff's designation or stated intention." *Lipton,* 514 A.2d at 1078.

Here, as noted above, plaintiff's claims in counts I through IV were labeled "derivative," and the claims in counts V through VIII, which virtually mirrored counts I through IV, respectively, were labeled "class claims." The corresponding counts differed in the allegation of who was injured, the corporation or the putative class. With respect to the self-dealing claim set forth in counts I and V, the complaint alleged that the defendant directors, by approving the Traco stock purchase agreement, breached their fiduciary duties and engaged in self-dealing for the purpose of entrenchment. The complaint also alleged that the stock purchase agreement caused a dilution in shareholders' voting rights due to the restriction therein that Traco vote its shares for the board's nominees for director. According to the complaint, this voting restriction had the purpose of entrenchment and "affect[ed] the other shareholders' voting rights in that the shareholders' ability to have nominees other than the Board's nominees elected [was] diluted."

■ The plaintiff argues that his self-dealing and entrenchment claims alleged an individual cause of action because the entrenchment activity was alleged to have directly impaired contractual voting rights. The defendants argue, however, that entrenchment claims are derivative and can be brought, if at all, only on behalf of the corporation. Generally, entrenchment claims are derivative because the alleged wrong affects all stockholders equally. (*Cottle v. Standard*

---

[5]The relation between the corporation and its stockholders is contractual. The corporate charter, articles of incorporation, bylaws, resolutions under which stock is issued, stock certificates, and statutes form the contract between the corporation and the stockholder and define the rights and obligations thereunder. 18A Am. Jur. 2d *Corporations* § 731, at 600-01 (1985); see also 11 W. Fletcher, Fletcher Cyclopedia of Corporations § 5083, at 38 (rev. perm. ed. 1995).

*Brands Paint Co.* (Del. Ch. March 22, 1990), Nos. 9342, 9405, 9151, slip op. at 3; *Lewis v. Spencer* (Del. Ch. October 31, 1989), No. 8651, slip op. at 2; *Moran v. Household International, Inc.* (Del. Ch. 1985), 490 A.2d 1059.) However, where entrenchment claims include allegations of loss or injury to the contractual rights of shareholders, such as their voting rights, the nature of the claim is individual. (Compare *Lipton v. News International, Plc* (Del. 1986), 514 A.2d 1075 (allegations of entrenchment and harm to shareholder contractual voting rights set forth individual claim), with *Moran v. Household International, Inc.*, 490 A.2d 1059 (allegation of entrenchment without corresponding allegation of harm to shareholders' contractual rights sets forth derivative claim only).) As stated in *Avacus Partners, L.P. v. Brian* (Del. Ch. October 24, 1990), No. 11001, slip op. at 22:

> "[C]laims of entrenchment may be either individual or derivative or both depending on the circumstances. An entrenchment claim will be an individual claim when the shareholder alleges that the entrenching activity directly impairs some right she possesses as a shareholder, such as the right to vote her shares. Shareholders do have a right to vote their shares, however, so a claim that the board improperly acted to entrench itself by issuing stock that impacts the shareholders' voting power may state either an individual or a derivative claim. [Citations.] Assuming the stock is issued for adequate consideration, the claim will be only individual. If the stock is issued for inadequate consideration, the corporation itself will be directly injured as well and both individual and derivative wrongs might be alleged."

The *Avacus Partners* court also stated that, when the board acts to entrench itself and does so by diluting the impact of the shareholders' voting power:

> "[w]hat arguably has been affected is not a corporate property or right, but the right of shareholders to elect the board, without unfair manipulation. *** The fact that all shareholders have been affected equally does not make this claim of improper interference with the right to vote a corporate claim." *Avacus Partners*, slip op. at 21-22.

■ In accordance with *Lipton v. News International, Plc* and *Avacus Partners, L.P. v. Brian*, we find that the plaintiff's entrenchment claims based upon vote dilution are individual in nature. Here, as in those cases, the plaintiff's entrenchment argument encompassed allegations of injury to the contractual rights of shareholders to vote for the election of the corporate directors. The plaintiff in the case at bar alleged that the voting restrictions in the Traco agreement, which obligated Traco, Hartmarx's largest shareholder, to vote its stock (18.3% of the outstanding common stock) for the director nominees

of Hartmarx's board of directors, diluted the voting power of the remaining nondirector shareholders.[6] The right of the shareholders to elect a board of directors without unfair manipulation is an individual contractual right and does not become a claim of the corporation merely by the fact that all shareholders have been equally affected. (*Avacus Partners, L.P. v. Brian* (Del. Ch. October 24, 1990), No. 11001.) Thus, since plaintiff's allegations of director self-dealing for the purpose of entrenchment by diluting the voting rights of Hartmarx's shareholders set forth an individual cause of action, class count IV should not have been dismissed for lack of standing. (However, as discussed in part III of this opinion, that count should nevertheless have been dismissed for failure to state a cause of action.) Moreover, since plaintiff's derivative count I also was premised on allegations of vote dilution and did not allege inadequate consideration, that count failed to state a derivative claim of injury to the corporation and should have been dismissed for lack of standing.

■ Plaintiff's "derivative count III" and "class count VII," the "failure to shop" counts, alleged a breach of fiduciary duty by failing to seek and procure the most beneficial price and terms for the common stock that was sold to Traco. Those counts alleged that the directors, motivated by "their own personal desire to maintain and perpetuate control of the Company and the Board," did not disseminate information to other interested investors and withheld requested financial information from potential investors prior to entering into the Traco stock purchase agreement. The gravamen of these counts appears to be injury to the corporation based on the defendant directors' approval of the sale of stock to Traco for inadequate consideration.[7] Similar allegations of entrenchment motives and inadequate consideration were found to present claims of direct injury to the

---

[6]While the substantive validity of the vote dilution allegation may be questionable, the plaintiff need not prove the allegation, but only allege it, in order to withstand a motion to dismiss for lack of standing. *Avacus Partners, L.P. v. Brian* (Del. Ch. October 24, 1990), No. 11001, slip op. at 23 (the degree of interference with the shareholders' right to vote goes to the validity of the claim not to its nature); see also *Lipton v. News International, Plc* (Del. 1986), 514 A.2d 1075, 1079 n.4 (although substantive validity of claim may be doubtful, "inquiry here [(standing to bring individual claim based on allegation of interference with right to vote)] is to the nature of claim and not to its merit").

[7]To the extent the plaintiff relies on *Revlon, Inc. v. Mac Andrews & Forbes Holdings, Inc.* (Del. 1986), 506 A.2d 173, for his "duty to shop" argument, his reliance is misplaced. The duty recognized in *Revlon, Inc.*, which

corporation in *Avacus Partners, L.P. v. Brian*. The court dismissed the plaintiff's individual action, finding that the claim could be asserted only by the corporation itself or, in proper circumstances, by a shareholder derivatively.

As in *Avacus Partners*, the claims presented in counts III and VII of the complaint in the instant case are derivative in nature and can only be brought by the corporation itself or by a shareholder's derivative suit brought on behalf of the corporation. The gist of plaintiff's allegations that the defendant directors failed "to shop" by negotiating a proposed stock sale with only one buyer and not presenting information of that proposed sale to other interested persons implies that the consideration for the stock could have been increased had the sale occurred in a more competitive atmosphere. That injury, inadequate consideration, inures directly to the corporation and only indirectly to the shareholders. Since the "failure to shop" claim was derivative, plaintiff's class count VII should have been dismissed for lack of standing; and derivative count III was properly dismissed if plaintiff failed to allege facts of presuit demand futility, an issue that will be addressed below.

■ Plaintiff's conspiracy counts, "derivative count IV" and "class count VIII," alleged that the defendant directors engaged in "a scheme to perpetuate themselves in office, and/or to promote personal and pecuniary interests, and/or to retain all other benefits derived from serving as a member of the Hartmarx Board of Directors." These conspiracy counts realleged "derivative counts I, II, and III" and "class counts V, VI, and VII," respectively. In view of our holdings above, however, that plaintiff has standing to bring count V individually and may have standing to bring derivative count III, assuming demand futility, only those counts can be relied upon in conspiracy counts VIII and IV, respectively.[8] Disposition of those underlying claims, and thus plaintiff's conspiracy counts, will be discussed further below.

---

imposed upon directors an obligation to maximize the company's value at a sale, applies only to situations where the breakup of the entire company is inevitable. See *Ivanhoe Partners v. Newmount Mining Corp.* (Del. 1987), 535 A.2d 1334.

[8]As noted in footnote 2 *supra*, the plaintiff has waived any argument regarding the dismissal of "derivative count II" and "class count VI" alleging that the defendant directors made several misrepresentations in a prospectus that was issued on July 17, 1991. It therefore follows that the plaintiff has waived any argument with respect to the dismissal of his conspiracy counts, "derivative count IV" and class count "VIII," to the extent that those counts rely on "derivative count II" and "class count VI."

## B. Derivative Claims—Demand Futility

◼ Plaintiff's failure-to-shop claim (derivative count III and class count VII), which we review as an inadequacy-of-consideration claim,[9] is derivative in nature. Thus, it becomes necessary to determine whether the plaintiff alleged sufficient facts in support of that claim to show that presuit demand upon Hartmarx's board of directors, as required by Delaware Chancery Court Rule 23.1, would have been futile. Delaware Chancery Court Rule 23.1 provides in pertinent part:

> "In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation *** the complaint *** shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort."

The purpose of this rule is to give the corporation the opportunity to rectify an alleged wrong without litigation through intracorporate dispute resolution and to control any litigation which does arise. (*Pogostin v. Rice* (Del. 1984), 480 A.2d 619; *Aronson v. Lewis* (Del. 1984), 473 A.2d 805.) In accordance with this provision, a plaintiff seeking to enforce a derivative claim must either (1) make presuit demand requesting that the corporation's board of directors assert the claim, or (2) establish that such a demand would be futile. The test employed in determining whether, for purposes of a motion to dismiss, a complaint has sufficiently alleged futility is whether, taking the well-pleaded facts as true, the allegations in the complaint raise a reasonable doubt that: (i) the directors are disinterested and independent or (ii) the directors exercised proper business judgment in approving the challenged transaction. (*Levine v. Smith* (Del. 1991), 591 A.2d 194; *Grobow v. Perot* (Del. 1988), 539 A.2d 180, 186; *Aronson v. Lewis*, 473 A.2d 805; *Seinfeld v. Bays* (1992), 230 Ill. App. 3d 412, 595 N.E.2d 69.) If the court, in the exercise of its sound discretion, is satisfied that the plaintiff has alleged particularized facts that, taken as true, support a reasonable doubt as to either aspect of this bifurcated analysis, demand futility is established. (*Pogostin v. Rice* (Del. 1984), 480 A.2d 619.) Each demand futility case must be analyzed and scrutinized according to its own unique set of facts taking into account the totality of the circumstances and the competing interests. *Bergstein v. Texas International Co.* (Del. Ch. 1982), 453 A.2d 467.

◼ Director disinterest and independence, which is determined at

---

[9]See footnote 7 *supra.*

the time the complaint is filed (*Pogostin v. Rice*, 480 A.2d 619), requires a director's decision to be based upon the corporate merits rather than extraneous considerations and influences (*Aronson v. Lewis*, 473 A.2d 805). Director interest, on the other hand, is manifested:

> "whenever divided loyalties are present, or a director either has received or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders. [Citation.] The question of independence flows from an analysis of the factual allegations pertaining to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction. [Citation.]" (*Pogostin*, 480 A.2d at 624.)

Absent particularized facts showing lack of director independence or disinterestedness, mere director approval of the challenged transaction is insufficient to excuse demand. *Aronson v. Lewis*, 473 A.2d 805.

■ The second prong of the demand futility inquiry focuses on the substantive nature of the challenged transaction and the board's approval thereof. As noted in *Pogostin v. Rice*, "the transaction is reviewed against the factual background of the complaint to determine whether a reasonable doubt exists at the threshold that the challenged action was a valid exercise of business judgment." (*Pogostin*, 480 A.2d at 624.) In making a demand futility determination, the court must weigh the presumption of the business judgment rule that attaches to board decisions, and which presumes that in making a business decision the directors of a corporation "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company" (*Aronson*, 473 A.2d at 812), against the well-pleaded facts alleged.

The plaintiff in the case at bar argues that his complaint alleged demand futility based on allegations that the defendant directors approved the Traco transaction for purposes of entrenchment and for the continued realization of stock options and $20,000 annual retainers. The plaintiff argues that receipt of these financial benefits, as well as the right of Hartmarx's directors to control Traco's votes, created a reasonable doubt as to the defendants' disinterest. The plaintiff further argues that these acts of director self-dealing, along with the directors' actions to amend the shareholder rights agreement, rebutted the presumption of the business judgment rule.

In *Grobow v. Perot* (Del. 1988), 539 A.2d 180, the court rejected similar entrenchment arguments made for purposes of establishing demand futility. The court held that a reasonable doubt of financial disinterest was not created by the mere allegation that the directors

received payment for their services. (*Grobow*, 539 A.2d at 188.) That court also rejected the plaintiffs' entrenchment argument because the plaintiffs did not plead any facts showing that the directors' positions were actually threatened at the time they approved the stock repurchase agreement (*cf. Unocal Corp. v. Mesa Petroleum Co.* (Del. 1985), 493 A.2d 946 (where outside takeover threatened, there is inherent conflict of director interest and business judgment presumption not applicable unless directors show good faith and reasonable investigation)) or that entrenchment was the compelling motive for the repurchase agreement. With respect to the second prong of the demand futility test, the *Grobow* court found that the complaint failed to raise a reasonable doubt that the directors exercised proper business judgment because the complaint alleged several legitimate purposes for the board's approval of the repurchase agreement. See also *Pogostin v. Rice*, 480 A.2d 619 (court rejected plaintiffs' entrenchment argument because plaintiff did not allege that control motive was sole or primary purpose for board's conduct and complaint did not overcome presumption that board properly and prudently exercised its managerial discretion).

■ Applying Delaware case law to the facts alleged in the instant complaint, we find that the plaintiff has not satisfied either prong of the demand futility test established in *Aronson v. Lewis* and its progeny. Plaintiff's allegations of director self-dealing for the purpose of entrenchment and continued receipt of their annual salaries of $20,000 do not sufficiently create a reasonable doubt regarding the directors' independence and disinterestedness or reasonable doubt that the Traco transaction was otherwise the product of a valid exercise of business judgment. With respect to the test of director disinterest, the plaintiff's complaint alleged no financial interest realized by the defendants other than usual directors' fees and did not allege facts to show that the defendants were motivated solely by the desire to retain the benefits of their positions. (See *Grobow v. Perot*, 539 A.2d 180; *Moran v. Household International, Inc.*, 490 A.2d 1059.) Director interest also was not established based upon the fact that Traco was required to vote its shares for the Hartmarx board's nominees. While allegations of voting restrictions can raise a reasonable doubt of director disinterest, those restrictions must be accompanied by other acts of the directors that suggest a plan to entrench themselves in office and to suggest that the directors acted solely out of entrenchment motives. See *Grobow v. Perot*, 539 A.2d 180; *Pogostin v. Rice*, 480 A.2d 619.

Where demand futility is in issue, and where entrenchment is alleged to be the sole or primary purpose for the directors' actions, that

allegation must be supported by detailed allegations of manipulation of corporate machinery by the directors in order to satisfy the second prong of the *Aronson* test. (*Pogostin v. Rice*, 480 A.2d 619.) The plaintiff has the burden to allege particular details of the entrenchment to establish reasonable doubt that the directors exercised proper business judgment in approving the challenged transaction. The plaintiff has not satisfied that burden based on the bare allegation that the board approved or rejected a transaction that resulted in entrenchment. *Pogostin v. Rice*, 480 A.2d at 627 (court holding that acceptance of an entrenchment argument based only on an allegation that the board voted to reject a tender offer "would condemn any board, which successfully avoided a takeover, regardless of whether that board properly determined that it was acting in the best interests of the shareholders"); see also *Cottle v. Standard Brands Paint Co.* (Del. Ch. March 22, 1990), Nos. 9342, 9405 (entrenchment argument rejected because there were no specific factual allegations from which it could be reasonably inferred that entrenchment was the directors' sole or primary purpose in rejecting an acquisition offer).

In *Avacus Partners, L.P. v. Brian,* allegations of entrenchment were found to be sufficient to rebut the business judgment presumption and to establish demand futility. In that case, the plaintiff alleged that the directors approved the transfer of a substantial block of shares in the defendant corporation into "friendly" hands to entrench themselves and to protect themselves from threatened takeovers. In support of this contention, the complaint alleged specific, quantified facts that showed inadequate consideration, namely, that the defendant directors approved one transaction involving the exchange of stock in the defendant corporation worth $5 million for stock having a market value of $400,000 and another transaction involving the exchange of stock worth $16 million to gain control of a company whose principal asset was valued at $110,000. To further corroborate plaintiff's claim of inadequate consideration, the plaintiff set forth specific allegations concerning the dismal operating performances of the companies involved in the exchanges. The plaintiffs also alleged that the directors approved amendments to the corporate bylaws that required an 80% vote of outstanding stock to remove them from office. The court found that presuit demand was excused because the plaintiff's complaint raised a reasonable doubt that the transactions were the product of valid business judgment because the consideration allegedly received by the corporation was " 'so inadequate that no person of ordinary, sound business judgment would deem it worth that which the corporation

paid.' " *Avacus Partners, L.P. v. Brian*, slip op. at 25-26, quoting *Grobow v. Perot*, 539 A.2d at 189.

Holdings similar to *Avacus Partners* were reached in *Abajian v. Kennedy* (Del. Ch. January 17, 1992), No. 11425, and *Good v. Texaco, Inc.* (Del. Ch. May 14, 1984), No. 7501, cases cited by the plaintiff. Those cases are distinguishable from the instant case, however. In those cases, as in *Avacus Partners*, the plaintiffs alleged specific facts of director interest and conduct creating reasonable doubt as to the valid exercise of business judgment. In *Abajian*, for example, the complaint alleged that, in consideration for long-term aircraft leases, the directors unnecessarily issued preferred stock to the lessor; that the stock had voting restrictions; that voting restrictions were not concessions in arm's length negotiations requested by the lessor but originated with the directors; that the lease could have been negotiated without issuance of preferred stock to the lessor; that the financial terms of the preferred stock were disadvantageous to the corporation as a source of financing; and that the lessor received an "expensive dividend" without a corresponding concession. The complaint also alleged that the transaction was entered into to insulate incumbent management from the possibility of a hostile takeover.

Similarly, in *Good v. Texaco, Inc.*, the complaint alleged that the directors' entrenchment actions were precipitated by speculation that certain individuals who had accumulated a 9.7% interest in the outstanding common stock would attempt a takeover. The complaint alleged that the directors misused corporate funds to repurchase a portion of those individuals' stock at a premium of 12% over market price and issued preferred stock in exchange for the remaining portion that had to be voted in accordance with the recommendations of the board on all issues. This voting arrangement gave the board the right to control 5% of the outstanding shares. The complaint further alleged that to further leverage their voting power, the directors intended to propose amendments to Texaco's certificate of incorporation that would discourage the future accumulation of substantial stock positions and would require an 80% vote of the shareholders to remove directors or amend the certificate of incorporation. Upon approval of these amendments, the directors' 5% voting power effectively would give them control of 25% of the 20% vote needed to defeat any shareholder action to remove them or approve a business combination they opposed. Acquisition of this voting power, which appeared to the be sole purpose of the challenged repurchase agreement, was found by the court to establish director interest and demand futility. See *Packer v. Yampol* (Del. Ch. April 18, 1986), slip op. at 13-14 (demand futility established by allegations of director

interest and entrenchment by accumulation of voting power through issuance of preferred stock with voting restrictions; where cost of stock sold should have been 10 times the amount received by the corporation; and where primary purpose of directors' conduct was to obstruct proxy contest).

Unlike the factual allegations in *Abajian* and *Good*, the allegations here do not suggest director interest for purposes of establishing demand futility. While plaintiff's complaint alleged voting restrictions that allowed director control of Traco's voting shares with respect to director elections, plaintiff's complaint did not establish director interest since it did not set forth specific allegations of corporate waste or inadequate consideration nor did it allege other director actions that would support the contention that the sole reason for the Traco transaction was to assure director incumbency. (See *Avacus Partners, L.P. v. Brian* (Del. Ch. October 24, 1990), No. 11001.) The plaintiff merely speculated that had the stock been offered to other interested investors a better price could have been procured. The plaintiff presented no quantified facts showing financial differentials. The plaintiff also sought to attach impropriety to the directors' adoption of an amendment to the stockholders' rights agreement so that the Traco transaction would not trigger activation of stockholders' rights to purchase Hartmarx common stock at a 50% discount despite the fact that the rights agreement allowed for such an amendment. More convincing, however, is the absence of any allegations of takeover threats as a motivating force for the directors' actions. The plaintiff's own factual allegations show motives other than entrenchment as reasons for defendants' approval of the Traco transaction, namely, the need to "counteract the huge losses in net worth and the resulting precarious position of Hartmarx." The plaintiff's complaint contained several factual allegations concerning the financial position of Hartmarx and its "significant decline" in revenues, net worth, and market and book values. Attached to the complaint was a copy of the minutes to the board meeting wherein the directors approved the Traco transaction. The minutes disclosed that the Traco transaction had been negotiated by a special committee appointed by the board, consisting of three outside directors, and by outside legal counsel. The transaction also was reviewed by Hartmarx's financial advisors, investment bankers, who recognized Hartmarx's need for additional equity and who indicated the transaction was "fair." Similar director deliberations were said to suggest nothing but "a carefully considered decision made on an informed basis" and were relied upon to reject plaintiffs' entrenchment claim as an excuse for presuit demand in *Pogostin v. Rice*, 480 A.2d at 627. There,

as here, the primary purpose of the challenged transaction served a legitimate corporate purpose and benefited the corporation. Where entrenchment appears to be a mere by-product of the transaction, we cannot say that the challenged transaction was not otherwise the product of a valid exercise of business judgment. Thus, in accordance with the demand futility test established in *Aronson v. Lewis*, we find that the plaintiff's complaint does not allege sufficient particularized facts to support a finding of demand futility; and plaintiff's derivative counts III and count IV, to the extent count IV relies on count III, are dismissed for lack of standing.

## III. Legal Sufficiency of Claims

■ The trial court dismissed plaintiff's complaint pursuant to section 2—619 of the Code of Civil Procedure because the complaint failed to allege sufficient facts of demand futility, apparently viewing plaintiff's complaint as presenting derivative claims only. In so holding, the court did not address defendants' alternative motion for dismissal for failure to state a cause of action under section 2—615. Since our review is *de novo* and since we can affirm the trial court's dismissal on any basis in the record (see *Hay v. Albrecht* (1988), 169 Ill. App. 3d 120, 523 N.E.2d 211), we must necessarily determine whether plaintiff's individual class claims, for which presuit demand is not required, stated causes of action for self-dealing and entrenchment based on allegations of dilution of voting rights (class count V) and conspiracy to accomplish that alleged wrongful act (count VIII).

With respect to the self-dealing/entrenchment count, the defendants argue that the plaintiff has not stated a cause of action because the plaintiff has not alleged facts to overcome the business judgment rule which presumes that directors' decisions are made on an informed basis, in good faith and in an honest belief that the actions taken are in the best interest of the company. In accordance with the business judgment rule, courts will not interfere with or substitute their judgment for the decisions of the directors absent a showing of bad faith, abuse of discretion or gross negligence. (*Aronson v. Lewis*, 473 A.2d at 812 n.6; *Warshaw v. Calhoun* (1966), 43 Del. Ch. 148, 221 A.2d 487.) As recognized in *Aronson v. Lewis*, the burden is on the party challenging the board's decision to establish facts rebutting the presumption. (See *Cede & Co. v. Technicolor, Inc.* (Del. 1993), 634 A.2d 345; *Moran v. Household International, Inc.*, 490 A.2d 1059 (business judgment rule creates a presumption which places upon the one attacking the action of the board the burden of demonstrating bad faith).) The plaintiff can rebut this presumption by alleging interest on the part of the directors or failure of the directors to

inform themselves, prior to making the business decision, of all material information reasonably available to them.

The plaintiff argues that he has set forth sufficient allegations of self-dealing and director interest to rebut the business presumption rule. The plaintiff relies on allegations that the directors approved the Traco transaction and the voting restriction provision therein for purposes of entrenchment and out of a "desire to serve their personal interests rather than in the best interest of the Corporation and its shareholders." The plaintiff also relies on the "Facts" section of his complaint that the defendants, other than director Hand, who was an inside director, received certain stock options and an annual retainer of approximately $20,000.

Our review of the plaintiff's complaint leads to a conclusion that plaintiff's allegations are conclusory in nature and, other than the reference to financial remuneration, present no facts of actual financial or personal interest. The complaint alleged only that one of the nine directors who approved the Traco transaction was an inside director. Thus, a majority of the directors who approved the transaction were outsiders who allegedly received usual directors' fees. Allegations concerning the receipt of such fees do not rebut the presumption of the business judgment rule. (See *Warshaw v. Calhoun* (1966), 43 Del. Ch. 148, 221 A.2d 487 (mere statement of fact of salary payments do not overcome presumption of good faith accorded to acts of directors).) As stated in *Moran v. Household International, Inc.*, "[w]here a majority of the directors are independent or outside directors receiving no income other than usual directors' fees, the presumption of good faith is heightened." *Moran v. Household International, Inc.*, 490 A.2d at 1074-75.

Moreover, the plaintiff did not rebut the business judgment presumption by pleading facts showing defendants' failure to inform themselves of material information before they approved the Traco transaction or by pleading information that should have been considered by the defendants. To the contrary, attached to the plaintiff's complaint was a copy of the minutes of the board meeting at which the Traco transaction was approved. Those minutes indicated that a special committee and outside counsel had conducted negotiations with Traco, that outside counsel and Hartmarx's financial advisors had reviewed the transaction, that the financial advisors recommended that the transaction was "fair" and recognized the need for Hartmarx to obtain additional equity, and that the directors presented questions to legal counsel and financial advisors before voting to approve the Traco transaction. These facts do not support an argument of uninformed decisionmaking and, instead,

support the opposite conclusion. Thus, since the plaintiff's complaint has not set forth specific facts to rebut the business judgment presumption, it fails to state a cause of action for breach of fiduciary duty based on self-dealing, entrenchment and vote dilution and must be dismissed pursuant to section 2—615 of the Code of Civil Procedure. See *Stamp v. Touche Ross & Co.* (1993), 263 Ill. App. 3d 1010, 636 N.E.2d 616.

This dismissal necessitates dismissal of plaintiff's conspiracy count as well. In Delaware, civil conspiracy is not an independent cause of action. It requires an underlying wrong which would be actionable absent the conspiracy. (*Nutt v. A. C. & S. Co.* (Del. Super. Ct. 1986), 517 A.2d 690; *McLaughlin v. Copeland* (D. Del. 1978), 455 F. Supp. 749, *aff'd* (3d Cir. 1979), 595 F.2d 1213 (the gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy).)[10] Here the alleged underlying wrong upon which the conspiracy action is premised, and which the plaintiff has standing to pursue as an individual action, involves the self-dealing, entrenchment and vote dilution activities of the defendant directors alleged in count V. Since the plaintiff's conspiracy claim has no viability absent a sufficiently pled underlying wrong or cause of action, and since we have held that the plaintiff has not sufficiently pled the claims asserted in count V, plaintiff's conspiracy count also must be dismissed pursuant to section 2—615 for the same reasons that compelled the dismissal of count V.

For the foregoing reasons, appellate case number 1—93—3866 is dismissed; appellate case number 1—94—0075 is affirmed.

No. 1—93—3866, Dismissed.

No. 1—94—0075, Affirmed.

McNULTY, P.J., and COUSINS, J., concur.

---

[10]Generally, conspiracy is pled as a cause of action in Delaware to implicate third parties who do not owe fiduciary duties directly to the plaintiff but who have conspired with those who do. See *Gilbert v. El Paso Co.* (Del. Ch. 1984), 490 A.2d 1050; *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.* (D. Del. 1983), 560 F. Supp. 1372, 1388 n.43, citing *Laventhol, Krekstein, Horwath & Horwath v. Tackmon* (Del. 1976), 372 A.2d 168 (a civil conspiracy action has two effects: first, to implicate others; and second, to increase the measure of damages by establishing joint and several liability).