JEROME H. LIPMAN *et al.*, Plaintiffs-Appellants, v. LEONARD A. BATTERSON *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—99—3587

Opinion filed September 29, 2000.—Rehearing denied October 23, 2000.

Storm & Gottesman, of Chicago (Timothy J. Storm, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Michael Dockterman, David L. Weinstein, and Leland H. Chait, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs, three shareholders of Illinois Superconductor Corporation (ISC), appeal the circuit court's order dismissing their third-amended class action complaint against defendants, ISC and members of ISC's board of directors, for failure to state a cause of action. On appeal, plaintiffs argue that the circuit court erred in determining that plaintiffs should have brought their claims in a derivative action instead of a direct class action. We affirm.

The facts of this case, as derived from plaintiffs' third amended complaint, are as follows. ISC is a publicly traded Delaware corporation that develops and sells filters used in cellular telephone base stations. In early 1997, ISC needed additional funds to finance its operations. ISC unsuccessfully attempted to raise funds through a public offering of stock. The offering was abandoned, leaving ISC in need of $15 million.

ISC subsequently received a proposal for financing from Brown,

Simpson LLC (Brown Simpson), a fund advisory firm based in New York City. Brown Simpson proposed providing up to $15 million by buying ISC preferred stock. This preferred stock would be convertible to ISC common stock at a price determined by a formula agreed upon by the parties. The financing would be made in steps, or "tranches," of up to $3 million each. On June 5, 1997, the ISC board approved the Brown Simpson financing arrangement.

Brown Simpson's intent was to make money by "short selling" large amounts of ISC's common stock. Short selling is accomplished by borrowing a stock and immediately selling the borrowed stock into the market at the current market price. The stock borrowed by a short seller must be replaced share for share at some time in the future. The short seller's goal is to later purchase shares of the stock at a lower price and use those cheaper shares to replace the borrowed stock. The short seller's profit is the difference between the proceeds he received from selling the borrowed stock and his cost to purchase the replacement stock.

Ordinarily, the short seller assumes the risk that the stock price will rise, thereby making it impossible to subsequently purchase stock at a price lower than the price at which he sold the borrowed stock. Here, though, plaintiffs alleged that ISC eliminated this risk in two ways. First, ISC provided Brown Simpson with "material, non public, confidential information" (hereinafter, the confidential information) about ISC's future business prospects which led Brown Simpson to believe that the market price of ISC stock would not likely rise. Second, ISC provided *newly issued* common stock to replace the stock that Brown Simpson sold short, thereby eliminating the risk that Brown Simpson would drive up the market price of ISC common stock by buying large quantities of that stock on the open market.

Counts I and II of plaintiffs' third amended complaint alleged that Brown Simpson agreed to the short-selling financing arrangement (hereinafter, the Brown Simpson financing arrangement) only after defendants disclosed the confidential information to Brown Simpson and concealed that information from plaintiffs. Plaintiffs pleaded that the Brown Simpson financing arrangement ultimately caused a "precipitous decline" in the price of ISC's common stock.

Count III alleged that the board of directors breached their fiduciary duty of due care by approving the Brown Simpson financing arrangement without first informing themselves that such an arrangement would depress the market price of the ISC common stock.

Counts IV and V alleged that the board of directors breached their fiduciary duty of due care by accepting the second and third "tranches" of funding pursuant to the Brown Simpson financing arrangement

without first informing themselves that such funding would depress the market price of the ISC common stock.

Count VI alleged that the board of directors breached their fiduciary duty of loyalty by failing to provide plaintiffs with information that would have allowed plaintiffs to take curative action prior to the "precipitous decline" in the price of the ISC common stock.

Count VII alleged that the board of directors breached their fiduciary duty of loyalty by accepting the Brown Simpson financing arrangement even though they should have known that such an arrangement would depress the price of ISC common stock.

Counts VIII and IX alleged that the board of directors breached their fiduciary duty of loyalty by accepting the second and third tranches of funding pursuant to the Brown Simpson financing arrangement, even though they should have known that such a financing arrangement would depress the price of ISC common stock.

Count X alleged that defendants ISC and the ISC board of directors violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) by disclosing material, confidential information to Brown Simpson and concealing the same information from plaintiffs, the result of which was to depress the price of ISC common stock.

Count XI alleged that ISC's acceptance of funds in connection with the Brown Simpson financing arrangement constituted a breach of ISC's "contract" with plaintiffs.

Count XII alleged that the board of directors breached their fiduciary duty of candor by failing to disclose to plaintiffs information that would have enabled plaintiffs to take curative action prior to the "precipitous decline" in the price of ISC common stock.

Plaintiffs sought certification of the action as a class action. Plaintiffs defined the class as "[a]ll persons and entities who owned the fully paid and non-assessable common stock of [ISC] in the period May 15, 1997, through December 31, 1997 ('Class Period' ), and were injured as a result of the director defendants' breaches of their fiduciary duties and/or [ISC's] violation of their stockholder rights."

The circuit court dismissed plaintiffs' third amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), finding that plaintiffs properly should have brought their action as a derivative action instead of a direct class action. Plaintiffs filed this timely appeal.

■ When ruling on a section 2—615 motion to dismiss, the court accepts as true all well-pleaded facts and all reasonable inferences therefrom. *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d 1, 4 (1996). The court should not dismiss a complaint unless it clearly appears

that no set of facts could be proved under the pleadings entitling plaintiff to relief. *Green*, 286 Ill. App. 3d at 4-5. In making such a determination, the court interprets the allegations of the complaint in the light most favorable to plaintiff. *Green*, 286 Ill. App. 3d at 5. In reviewing orders on a motion to dismiss, the appellate court applies a *de novo* standard of review. *Doe v. TCF Bank Illinois, FSB*, 302 Ill. App. 3d 839, 841 (1999).

■ The issue of whether plaintiffs properly should have brought their claims in a derivative action instead of a direct class action is determined by application of the substantive law of Delaware since ISC is incorporated in that state. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 667 (1996).

■ Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief that could result if plaintiffs were to prevail. *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 352 (Del. 1988). In a derivative suit, the shareholder sues on behalf of the corporation for harm done to it whereas, in a direct action, the shareholder brings suit individually or on behalf of the class of shareholders for injuries done to them in their individual capacities. *Kramer*, 546 A.2d at 351. To have standing to sue individually, plaintiffs must allege an injury separate and distinct from other shareholders or a wrong involving a contractual right of a shareholder that exists independently of any right of the corporation. *Kramer*, 546 A.2d at 351.

Here, plaintiffs argue that they have standing to sue individually because the majority of their claims are for breach of fiduciary duties that defendants owed directly to plaintiffs. Plaintiffs also argue that they suffered injury (loss of stock value) as a result of defendants' breaches of duty, whereas defendants sustained no injury but instead benefitted from their alleged wrongdoing. Plaintiffs argue that an award of relief to plaintiffs would redress the alleged wrong, whereas an award of relief to defendants in a derivative suit would serve only to reward a "wrongdoer."

■ We disagree. The Delaware Supreme Court has stated:
"[A]ctions charging 'mismanagement which depress[ ] the value of stock [allege] a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action.' [Citations.] Thus, where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature." *Kramer*, 546 A.2d at 353.

■ Here, the essence of plaintiffs' entire third amended complaint

is that defendants engaged in mismanagement that caused plaintiffs' stock values to decrease. Specifically, plaintiffs allege that defendants engaged in mismanagement by agreeing to the Brown Simpson financing arrangement while ignoring or failing to first inform themselves as to the probable consequences thereof. Plaintiffs also allege that defendants engaged in mismanagement by disclosing material information to Brown Simpson (and concealing said information from plaintiffs), the result of which was to encourage Brown Simpson to agree to the financing arrangement. Plaintiffs allege that defendants' mismanagement caused "precipitous decline" in the price of their stock. Accordingly, plaintiffs' complaint is derivative in nature.

Plaintiffs argue that they are only required to bring a derivative action in cases involving corporate waste. Plaintiffs argue that there is no allegation of corporate waste here, and therefore their action need not be brought derivatively. Plaintiffs are incorrect. Even though plaintiffs' claims are not labeled with the "corporate waste" descriptor, plaintiffs' alleged injury rests on allegations that some form of corporate mismanagement lowered the value of plaintiffs' stock. The Delaware Supreme Court has held that such claims of shareholder injury are derivative in nature. See *Kramer*, 546 A.2d at 353.

Plaintiffs argue that count XI of their third amended complaint states a cause of action for breach of contract. In support, plaintiffs cite *Barbieri v. Swing-N-Slide Corp.*, No. 14239 (Del. Ch. May 7, 2000) and *Moran v. Household International, Inc.*, 490 A.2d 1059 (1985), *aff'd*, 500 A.2d 1346 (1985). In *Barbieri*, plaintiff alleged that the director defendants manipulated the circumstances surrounding a self-tender offer in order to create a market for defendants to sell their shares. The court held that the plaintiff/stockholders could bring a direct action in response to the unfair self-tender offer. *Barbieri* is inapposite, as no self-tender offer is alleged here.

In *Moran*, the court held that a shareholder may bring a direct action for breach of contract if the contractual breach involves a wrong to the shareholder and not to the corporation. Here, the alleged breach of contract involves ISC's mismanagement in accepting funds in connection with Brown Simpson's financing arrangement. As discussed, ISC's corporate mismanagement is a wrong to the corporation; therefore, plaintiffs' breach of contract count is derivative in nature.

For the foregoing reasons, we affirm the circuit court. As a result of our disposition of this case, we need not address defendants' other arguments on appeal.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.