United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 15, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 12, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 04-20380

———————————

ROBERT F SMITH

                    Plaintiff - Appellant

     v.

WASTE MANAGEMENT INC., a Delaware Corporation

                    Defendant - Appellee

———————————————————————————————————————————

Appeal from the United States District Court for the
Southern District of Texas, Houston

———————————————————————————————————————————

Before KING, Chief Judge, and JOLLY and DENNIS, Circuit Judges.

KING, Chief Judge:

     Plaintiff-Appellant Robert Smith, the former owner of

several million shares of Waste Management, Inc. stock, has sued

Defendant-Appellee Waste Management for fraud and negligent

misrepresentation in connection with losses he sustained when

Waste Management's share price fell in late 1999.  On appeal,

Smith alleges that the district court erred when it found that

his claims were derivative and barred by res judicata.  For the

following reasons, we AFFIRM the judgment of the district court.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Robert Smith is a former officer and director of USA Waste Services, Inc. In July of 1998, USA Waste merged with Waste Management, Inc. At the time of the merger, Smith held a substantial number of USA Waste shares. As a result of the merger, these shares were converted into Waste Management shares. By June of 1999, Smith owned approximately 2.4 million Waste Management shares, most of which had been committed by him as collateral for loans used to pay for his business endeavors. By pledging Waste Management shares as collateral, Smith had obtained $54 million in loans from five lenders. He had also pledged 1.3 million of his Waste Management shares to borrow an additional $50 million from Merrill Lynch & Co.

In the late spring of 1999, Ed Hayes, an accountant who served as the chief financial officer for various companies owned by Smith, allegedly began urging Smith to sell at least some of his Waste Management stock to reduce his loan balances. Chris Pakeltis, Smith's personal accountant, also allegedly recommended that he sell some of his Waste Management shares during this time period. Smith, however, chose not to sell his shares. According to him, his decision to retain his Waste Management shares resulted from public statements made by Waste Management. Specifically, on May 6, 1999, Waste Management stated in a press release that its first-quarter net income had increased 93% from the previous year and that earnings per share had similarly

increased by 79%. Likewise, on May 6, 1999, Waste Management conducted a conference call with investors and analysts, during which it predicted that its earnings would climb to $3.50 per share by the next year. Additionally, Waste Management officers stated at an industry convention that earnings per share would likely be $3.60 by the next year. According to Smith, he decided not to sell his Waste Management shares after hearing these positive representations about Waste Management's future earnings.

On July 6, 1999, Waste Management revealed that its second-quarter earnings would fall $250 million below the levels it had predicted several weeks before. As a result of this announcement, Waste Management's stock price dropped by more than $20 per share. On August 3, 1999, Waste Management made another negative adjustment to its projected second-quarter earnings, and its share price continued to drop. By the end of 1999, Smith's Waste Management shares, as a result of the decline in the company's share price, had fallen to 40% of their value at the time of the merger. Furthermore, as a result of this drop in value, Smith's Waste Management shares were rendered insufficient collateral for his various business loans, and the banks that made the loans foreclosed upon his Waste Management stock. According to Smith, these foreclosures had a domino effect, causing his other business loans, which were not secured by Waste Management shares, to be harmed, since Smith's sudden need for

3

available resources caused him to default on these loans as well. Ultimately, Smith filed a petition for bankruptcy.

As a result of the decline in Waste Management's share price, two derivative actions were brought on behalf of all Waste Management stockholders in Delaware. On September 20, 2001, a settlement of the consolidated Delaware actions (the "Delaware litigation") was approved by the Delaware Chancery Court, and final judgment was entered. In re Waste Management, Inc. Shareholder Derivative Litigation, C.A. No. 17313 NC (Del. Ch. Sept. 20, 2001). The judgment in the Delaware litigation disposed of all derivative claims by Waste Management shareholders that related to, inter alia: (1) Waste Management's revenue shortfall for the second quarter of 1999; (2) Waste Management's budgeting process for 1998, 1999, and 2000; (3) public statements by Waste Management or company officials regarding the company's actual or projected financial performance or results (including, without limitation, representations made in the third quarter of 1999); and (4) the company's financial reporting and accounting practices during 1998 and 1999.

Notwithstanding the Delaware litigation, Smith sued Waste Management in the United States District Court for the Northern District of Illinois, alleging fraud and negligent misrepresentation, seeking actual damages of $100 million, and seeking punitive damages of an additional $100 million. This case was subsequently transferred to the United States District

4

Court for the Southern District of Texas. Waste Management moved for dismissal under FED. R. CIV. P. 12(b)(6), claiming that Smith's claims were derivative in nature and barred by res judicata because of the September 20, 2001 order and final judgment in the Delaware litigation. The district court agreed, holding that Smith's claims were derivative and barred by res judicata. Smith now appeals the district court's dismissal of his suit.

## II. STANDARD OF REVIEW

This court reviews de novo the grant of a motion to dismiss under FED. R. CIV. P. 12(b)(6). <u>Martin K. Eby Const. Co. v. Dallas Area Rapid Transit</u>, 369 F.3d 464, 472 (5th Cir. 2004). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## III. DISCUSSION

**A. Smith's Claims Are Derivative**

The first question before this court is whether Smith's claims are direct or derivative. Smith states that because Waste Management is a Delaware corporation, Delaware law will determine the answer to this question. He then argues that the district court erred when, relying on Delaware law, it found that he had alleged derivative, not direct, claims because he did not allege

5

a "special injury" distinct from that suffered by other shareholders or a wrong involving one of his contractual rights as a shareholder. According to Smith, he has alleged a special injury because while other Waste Management shareholders did not uniformly forego the recommended sale of their shares, he did. Specifically, Smith argues that, unlike other Waste Management shareholders, he made a specific decision, contrary to the advice of his accountants, to hold his Waste Management shares when he was advised to sell them.

Smith also claims on appeal that the Supreme Court of Delaware has articulated recently a new standard for determining whether a claim is derivative or direct in Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004). According to Smith, Tooley states that the determination of whether a claim is derivative or direct will turn solely on who suffered the alleged injury and who would benefit from any recovery. Smith then states that his claims are direct because: (1) he relinquished the opportunity to sell his shares in 1999 and, hence, he suffered the alleged injury; and (2) he would receive the benefit of any recovery from his lawsuit.

This court looks to the Delaware law, including the Delaware Supreme Court's recent opinion in Tooley, to decide whether Smith's claims are direct or derivative.[1] In Tooley, the

---

[1] Smith and Waste Management agree, and the district court correctly concluded, that Delaware law applies to whether

6

Delaware Supreme Court discarded the "special injury" test urged by Smith and in its place articulated the following test for determining whether a claim is derivative or direct:  "The analysis must be based solely on the following questions:  Who suffered the alleged harm--the corporation or the suing stockholder individually--and who would receive the benefit of the recovery or other remedy?"  Tooley, 845 A.2d at 1035.  According to the Delaware Supreme Court, this approach is "to be applied henceforth in determining whether a stockholder's claim is derivative or direct."  Id. at 1033.  The court then clarified this test, stating:

> The proper analysis has been and should remain that . . . a court should look to the nature of the wrong and to whom the relief should go.  The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

Id. at 1039 (emphasis added).

---

Smith's claims are direct or derivative.  In a diversity action, a federal court must apply the choice of law rules of the state in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  "Where a transferee court presides over [a] diversity action[] . . . under the multidistrict rules," the governing law comes from the "jurisdiction in which the transferred" case originated.  In re Air Disaster, 81 F.3d 570, 576 (5th Cir. 1996).  Because Smith originally filed suit in Illinois, Illinois conflict rules apply.  Under Illinois law, the determination of whether a plaintiff's claims are direct or derivative depends upon the law of the company's state of incorporation.  Lipman v. Batterson, 738 N.E.2d 623, 626 (Ill. App. Ct. 2000); Spillyards v. Abboud, 662 N.E.2d 1358, 1361 (Ill. App. Ct. 1996).  Because Waste Management is incorporated in Delaware, Delaware law will determine whether Smith's claims are direct or derivative.

7

Applying the principles set forth in Tooley to the present case, it is clear that Smith's claims are derivative, not direct. The misrepresentations that allegedly caused Smith's losses injured not just Smith but the corporation as a whole. In Manzo v. Rite Aid, No. Civ. A. 18451-NC, 2002 WL 31926606, at *5 (Del. Ch. 2002) (unpublished), aff'd, 825 A.2d 239 (Del. 2003), the Delaware Chancery Court, relying on Kramer v. Western Pacific Industries, Inc., 546 A.2d 348 (Del. 1988), found that a plaintiff's claims were derivative, not direct.[2] Explaining its holding, the court stated that "[t]o the extent that plaintiff was deprived of accurate information upon which to base investment decisions and, as a result, received a poor rate of return on her Rite Aid shares, she experienced an injury suffered by all Rite Aid shareholders in proportion to their pro rata share ownership." Manzo, 2002 WL 31926606, at *5. Thus, when a corporation, through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is revealed, the corporation itself has been injured. Here, the harm that befell Smith--the drop in share price caused by the untimely disclosure of unfavorable financial data--was a harm that befell all of Waste Management's

_____

[2]    Tooley explicitly endorsed Kramer's approach of looking at the nature of the wrong and to whom the relief should go in order to determine if a suit is derivative or direct. Tooley, 845 A.2d at 1038. Thus, even though Manzo was decided before Tooley, it applied the correct test, and there is no reason to think it is no longer good law.

8

stockholders equally. Stated differently, the misconduct alleged by Smith did not injure Smith or any other shareholders directly, but instead only injured them indirectly as a result of their ownership of Waste Management shares. As such, Smith cannot prove his injury without also simultaneously proving an injury to the corporation. Accordingly, in light of Tooley, we find that Smith's claims are derivative under Delaware law. See Tooley, 845 A.2d at 1033, 1035, 1039.

Our conclusion is reinforced by the fact that if Smith's claims were construed as direct rather than derivative, Smith would be allowed to benefit (by obtaining a judgment against Waste Management) at the expense of all other shareholders who are similarly situated. That is, Smith would be allowed to recover the full amount of his losses from the diminished assets of Waste Management, while similarly situated shareholders would not. By finding that Smith's claims are derivative, we ensure that Smith will not incur a benefit at the expense of other shareholders similarly situated. See Cowin v. Bresler, 741 F.2d 410, 414 (D.C. Cir. 1984) ("Requiring derivative enforcement of claims belonging in the first instance to the corporation also prevents an individual shareholder from incurring a benefit at the expense of other shareholders similarly situated.").

Our conclusion that Smith's claims are derivative is similar to the Texas Court of Appeal's recent holding in Shirvanian v. DeFrates, No. 14-02-00447-CV, 2004 WL 2610509, at *1 (Tex. App.--

9

Hous. [14 Dist.] Nov. 18, 2004) (Shirvanian II). In this case,
certain Waste Management shareholders, whose shares declined in
value as a result of the decline in Waste Management's share
price in the summer of 1999, sued the corporation for fraud,
intentional misrepresentation, negligent and grossly negligent
misrepresentation, and conspiracy, arising from alleged oral
inducements not to sell their Waste Management shares. On
January 8, 2004, the Texas Court of Appeals issued an opinion in
favor of the plaintiffs, holding that their lawsuit was a direct
action, not a derivative action. Shirvanian v. DeFrates, No.
14-02-00447-CV, 2004 WL 35987 (Tex.App.--Hous. [14 Dist.] Jan.
08, 2004) (Shirvanian I). In his briefs to this court, Smith
cites this decision in support of his claims. After the briefs
had been filed in the present case, however, the Texas Court of
Appeals withdrew its opinion in Shirvanian I and granted
rehearing in light of Tooley. On November 8, 2004, the Court of
Appeals, on rehearing, held that under Tooley, the plaintiffs'
claims were derivative and barred by res judicata. Shirvanian
II, 2004 WL 2610509, at *6-7. In the words of the Court of
Appeals:

> To decide if the harm was to the corporation or to the
> stockholder individually, the [Delaware Supreme Court
> in Tooley] suggested the most relevant question is
> whether the stockholder can prevail without showing an
> injury to the corporation. . . . The stockholder must
> demonstrate that the duty breached was owed to the
> stockholder and that he or she can prevail without
> showing a corresponding injury to the corporation.
> Applying those principles here leads to the conclusion

10

that the Shirvanians' complaints are derivative, not direct, and could be asserted only on behalf of the corporation. The misrepresentations the Shirvanians allege caused their injury were based on mismanagement of the corporation's assets. The Shirvanians cannot prove their injury without proving an injury to the corporation. We hold, therefore, that the Shirvanians' suit is derivative under Delaware law.

Id. at *6. Accordingly, Shirvanian II supports this court's determination that Smith's claims are derivative, not direct.[3]

## B. Res Judicata Bars Smith's Claims

Because Smith's claims are derivative, they are barred by res judicata. Res judicata prevents the relitigation of claims that have already been finally adjudicated or that should have been litigated in the prior lawsuit. United States ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs., 336 F.3d 346, 357 (5th Cir. 2003). Res judicata applies when: (1) there was a previous final judgment on the merits; (2) the prior judgment was between identical parties or those in privity with them; and (3) there is a second action based on the same claims as were raised or could

---

[3]    While no court in this circuit has yet addressed Tooley, the Delaware Chancery Court has relied on Tooley in several cases to hold, as the Texas Court of Appeals held in Shirvanian, that a claim is derivative, not direct. See, e.g., In re Syncor Int'l Corp. S'holders Litig., 857 A.2d 994, 995-98 (Del. Ch. 2004); Dieterich v. Harrer, 857 A.2d 1017, 1025-28 (Del. Ch. 2004); FS Parallel Fund L.P. v. Ergen, No. Civ. A 19853, 2004 WL 3048751, at *3 (Del. Ch. Nov. 03, 2004) (unpublished); see also Gaia Offshore Master Fund, Ltd. v. Hawkins, No. C03-3657, 2004 WL 2496142, at *3-4 (N.D. Cal. Nov. 5, 2004); Schuster v. Gardner, 25 Cal. Rptr. 3d 468, 476-78 (2005).

11

have been raised in the first action.  See id.  Smith himself admits that if his claims are derivative, they are barred by res judicata.  This follows from the fact that the September 20, 2001 final judgment in the Delaware litigation against Waste Management is a final judgment that: (1) disposes of all derivative claims by Waste Management shareholders against the company pertaining to misrepresentations about Waste Management's projected earnings and the sudden fall in its share price in 1999; and (2) is between parties identical to, or in privity with, those now before this court.  Accordingly, because Smith's claims are derivative, they are barred by res judicata and the dismissal of his complaint was proper.[4]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4]    Because Smith's claims are barred by res judicata, the court need not address Waste Management's further argument that holder claims are not cognizable under this court's decision in Crocker v. FDIC, 826 F.2d 347 (5th Cir. 1987), or under the Supreme Court's decision in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).

12